BOYD BURROWES, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED DECEMBER 14, 1909.    No. 15,846.

1. Appeal: BILL OF EXCEPTIONS. Affidavits or other evidence used in support of a motion objecting to the jurisdiction of the district court cannot be considered on appeal to this court, unless made a part of the bill of exceptions. In such case the ruling of the district court retaining jurisdiction will not be disturbed.

2. Carriers: LIABILITY. To render a transportation company liable as a common carrier for the loss or destruction of goods, they must have been delivered to and accepted by it for transportation.

3. ——: ——. The plaintiff, who was the proprietor of a tent show, loaded a part of his outfit on Sunday afternoon into a car furnished him by the railroad company and retained the remainder for his use during the following night, under an agreement with the agent that the plaintiff would finish loading the car on the following Monday morning, when it was to be hauled to a station some twelve miles distant. The car containing the goods was destroyed by fire, without negligence on the part of the defendant company, before the time came for loading the remainder of plaintiff's outfit. *Held*, That defendant was not liable as a common carrier for the loss occasioned thereby.

35

APPEAL from the district court for Holt county: WIL-LIAM H. WESTOVER, JUDGE. *Reversed.*

, *N. K. Griggs,* for appellant.

*M. F. Harrington, contra.*

BARNES, J.

Action in the district court for Holt county to recover damages for the destruction of property alleged to have been delivered to the defendant as a common carrier to be transported and safely delivered at Ashton, Nebraska. Plaintiff had judgment, and the defendant has appealed.

Two questions are presented by the record, which may be briefly stated as follows: (1) The court erred in over-ruling the defendant's objection to the jurisdiction; (2) the judgment is not sustained by the evidence.

Considering the first assignment, it appears that suit was originally brought against appellant and the Chicago, Burlington & Quincy Railroad Company and the Burlington & Missouri River Railroad in Nebraska jointly. All of the defendants, by special appearance, objected to the jurisdiction of the court for want of proper service of summons upon them, and supported their objections by affidavits tending to impeach the officer's return upon the writs, and show that the service was not made upon either of the defendants in the manner provided by law. On the 23d day of March, 1908, the district court overruled these objections, to which the defendants duly excepted, and thereafter applied for and were given until the 30th day of that month to answer plaintiff's petition, and it was agreed between the parties that the cause should be set down for trial on the 1st day of April, 1908. Answers were filed, by which the defendants renewed their objection to the jurisdiction of the court, admitted their corporate existence, and denied all of the other allegations of plaintiff's petition. On the trial plaintiff dismissed his action as to the Chicago, Burlington & Quincy Rail-

road Company and the Burlington & Missouri River Railroad. The defendant offered no evidence to support its plea to the jurisdiction, and the affidavits used in support of its motion objecting to the jurisdiction of the court are not contained in the bill of exceptions. It is true that what purport to be copies of the affidavits are attached to the transcript; but, as above stated, not having been made a part of the bill of exceptions, they cannot be considered.

In *First Nat. Bank v. Carson,* 48 Neb. 763, it was held: "The action of the district court in overruling a motion cannot be reviewed here where evidence was necessary to support such motion and such evidence was not preserved by a bill of exceptions." In *Morsch v. Besack,* 52 Neb. 502, we said: "Affidavits used on the hearing of a motion in the trial court, to be available on review, must be included in a bill of exceptions." *Carmichael v. McKay,* 81 Neb. 725, was a case where jurisdiction of the justice of the peace who rendered the judgment, from which an appeal was taken to the district court, was challenged in such a manner as to present a question of fact, and it was contended by the appellant that the record disclosed that the facts had been determined upon the affidavit of one Justice Burton. There was no bill of exceptions, but there was an affidavit in the transcript. It was said: "As no bill of exceptions was preserved, we are unable to say upon what evidence the district court acted in determining the question of fact. This court has repeatedly held that, where affidavits are used on the hearing of a motion, or in support of or against the issuance of a temporary injunction, if they are not preserved in a bill of exceptions, they will not be considered in this court." We are not aware of the existence of any case where we have announced a contrary rule. It follows from the foregoing that, the presumption in favor of the validity of the judgment of the district court not having been overcome by anything contained in the record, its ruling on the question of jurisdiction should be affirmed.

We will now consider defendant's remaining conten-
tion that the judgment is not sustained by the evidence.
It appears from the transcript that plaintiff's petition
was framed with a view to charge the defendant with
liability as a common carrier and also as a warehouseman
or bailee; but, having failed to show negligence of any
kind on the part of the defendant, plaintiff must recover,
if at all, on defendant's liability as a common carrier or
an insurer of the safe delivery of his property. There
seems to be little, if any, conflict in the evidence. The
plaintiff testified, in substance, that just prior to the 12th
day of May, 1907, he had been giving a tent show in the
village of Loup City, Nebraska; that he desired to move
his show to the village of Ashton, some twelve miles dis-
tant on the line of the defendant's railroad, and to that
end applied to defendant's agent for a car in which to
ship his entire outfit to that point; that on Saturday be-
fore his loss occurred he spoke to defendant's agent about
loading on Sunday afternoon, and the agent said it would
be all right. Plaintiff said: "I told him I wanted to load
my freight and baggage, and I wanted to keep my cook
tent and a couple or three sleeping tents out, putting them
in Monday morning, and he advised me that it would be
all right." It appears that a car was placed on defend-
ant's side or passing track at the plaintiff's disposal, and
he was notified of its position. It further appears that
no trains were due to pass that station until the next Mon-
day morning at 9 : 30 o'clock; that defendant's agent vis-
ited another village some distance away on Sunday, and
that plaintiff had notice of those facts. On Sunday after-
noon plaintiff and his employees took possession of the
car, and placed therein his main tent, with its poles,
stakes, ropes, etc., together with a gas machine which he
used to manufacture gas, and thus supply light for his
evening performances. When he had partly loaded his
outfit, he or one of his men closed the car door. The re-
mainder of his plant, which included his cook tent, his
sleeping tents and bedding, together with some personal

baggage, his gasoline stove and cooking utensils, was kept out for use over night. These were to be loaded the following morning, and plaintiff was then to furnish a statement of weights and the contents to the agent, who would then seal the car and fix the charges for transportation. The car was then to go forward in the 9:30 passenger train, to which the defendant company was to attach it. On Monday morning, at about 5 o'clock, it was discovered that the car containing plaintiff's goods was on fire, apparently having become ignited from the inside. In spite of all efforts to extinguish the fire, the car, together with its contents, was totally destroyed. No notice was given the defendant or its agent that plaintiff had commenced to load the car, and the agent had no actual knowledge of that fact until the car was discovered to be on fire.

There is thus presented the question as to whether the defendant was liable to the plaintiff as a common carrier for the loss of his property. The rule seems to be well settled that, in order to render a transportation company liable as a common carrier for the loss of goods, delivery of the goods must be made to the carrier or his agent for transportation; "for, if the goods are delivered to him to be stored by him for a certain time, or until the happening of a certain event, or until something further is done to prepare them for transportation, or until further orders are received from the owner, the carrier becomes a mere depositary or bailee until the appointed time has expired, or the other contingency happened upon which the carriage is to commence, or until further orders have been given, as the case may be; for nothing could be more unjust than to permit the owner of the goods to impose upon a mere depositary or warehouseman, whether he has yet become related to the goods as carrier or not, the extremely hazardous responsibility of the common carrier, so long as it might suit his interest or convenience to do so." 1 Hutchinson, Carriers (3d ed.), sec. 112. See, also, secs. 113-125.

In *Basnight v. Atlantic & N. C. R. Co.*, 111 N. Car. 592,

16 S. E. 323, it was held that the mere loading of goods into a car standing on a side-track does not constitute a delivery to the carrier, where the station agent, on being notified of the fact, declines to ship the goods. In *St. Louis, A. & T. H. R. Co. v. Montgomery*, 39 Ill. 335, it was held that the technical liability of a common carrier does not attach until the delivery to him of the property is complete. In that case A delivered to the railroad company for transportation a quantity of hay, which was placed on platform cars. The next day, when the company was about to send it forward, A requested that it should not be taken away until he could first see the party to whom it was sold, which request was complied with, and the next day the hay was ignited by sparks from a passing locomotive and a portion of it burned. It was held that, from the moment A requested the hay to be detained, the liability of the company was that of a warehouseman only. *Missouri P. R. Co. v. Riggs*, 10 Kan. App. 578, 62 Pac. 712, was an action instituted against the railroad company to recover the value of certain goods-delivered by the agent of the plaintiff to the agent of the defendant at its station in the city of Osborne, to be carried to the city of Chicago, Illinois, and there delivered to the plaintiff. The defendant denied that the goods were received by it as a common carrier, and alleged that they were received by it as a warehouseman only, and that the same was destroyed by the act of God, lightning having struck the warehouse or depot in which the goods were stored, and that they were destroyed by fire as the result thereof. There was a trial to the jury, a verdict in favor of the plaintiff, and judgment was rendered thereon; and it was held that, where goods are delivered to a carrier to be shipped, but not to be shipped until other goods are delivered the next morning to be shipped with them, its liability in the meantime is that of a warehouseman only. In *Missouri P. R. Co. v. McFadden*, 154 U. S. 155, it was said: " 'The liability of a carrier begins when the goods are delivered to him

or his proper servant authorized to receive them for carriage.' Redfield, Carriers, sec. 80. 'The duties and the obligations of the common carrier with respect to the goods commence with their delivery to him, and this delivery must be complete, so as to put upon him the exclusive duty of seeing to their safety. The law will not divide the duty or the obligation between the carrier and the owner of the goods. It must rest entirely upon the one or the other; and, until it has become imposed upon the carrier by a delivery and acceptance, he cannot be held responsible for them.' Hutchinson, Carriers (2d ed.), sec. 82." It was further said: "Whilst the authorities may differ upon the point of what constitutes delivery to a carrier, the rule is nowhere questioned that, when delivery has not been made to the carrier, but, on the contrary, the evidence shows that the goods remained in the possession of the shipper or his agent after the signing and passing of the bill of lading, the carrier is not liable as carrier under the bill. Of course, then, the carrier's liability as such will not attach on issuing the bill in a case where not only is there a failure to deliver, but there is also an understanding between the parties that delivery shall not be made till a future day, and that the goods until then shall remain in the custody of the shipper."

It seems clear, in the case at bar, that there was no delivery of the plaintiff's goods for immediate shipment; that, while it is true the car was on defendant's side-track, yet it was in the possession of the plaintiff. He had only loaded a part of the goods for shipment, and it had been agreed that the remainder of them should not be loaded until the following morning at a time subsequent to the destruction of the car by fire. No bill of lading had been issued by the company; no receipt for the goods had been given, and it still remained for the plaintiff to finish loading the car, to notify the defendant when he had done so, to furnish weights and contents, after which the rate for transportation was to be fixed by the agent be-

fore the car was sealed and ready to go forward to its place of destination.

We are not without authority of our own on this question. In *Chicago, B. & Q. R. Co. v. Powers*, 73 Neb. 816, it was held that a railroad company which constructs its yards by the side of its track to facilitate the loading and unloading of stock is not responsible as a common carrier for stock placed in such yards for subsequent shipment, but subject to the right of the shipper to remove the stock from the pens for feed and water before the shipment is actually made, and its liability is no greater than that of an ordinary depositary or bailee. It was said in that case that the liability of a common carrier "does not attach until the goods are unconditionally delivered by the shipper and accepted by the carrier." The foregoing rules are so well established that it is unnecessary to cite further authorities in support of them.

In a well-written brief counsel for the plaintiff has cited certain authorities in support of his contention that defendant's liability is that of a common carrier. Those authorities will now receive our consideration. *Southern Express Co. v. Newby*, 36 Ga. 635, was a case where the express company was to receive certain goods at the depot, where they were delivered at the time agreed upon. It was held that the liability of the express company as a common carrier began when they were so delivered. In *Watson v. Memphis & C. R. Co.*, 56 Tenn. 255, the shipper applied to the agent of the defendant company the day before his cotton was hauled to the depot, who made an absolute agreement, in consideration of the freights to be paid, to receive the cotton when tendered and to forward it as soon as he could. It was held that this was a complete contract, and the force of it could not be avoided by refusing to receive the cotton when tendered the next day. It was insisted on the part of the company that the agreement was that the company was to receive it when tendered, and forward it as soon thereafter as it was able. It was held that the question was one for the jury.

and if the agreement was that the cotton was to be received when tendered the next day, and the company suffered plaintiff to leave it at its depot without objection, it was at its risk from that day; that the risk of the common carrier begins upon the delivery and acceptance of the goods. *Southwestern R. Co. v. Webb*, 48 Ala. 585, was a case where cotton was delivered or placed upon the platform at the defendant's station for shipment. There was a failure to deliver the cotton at the place of consignment. It was held that the company was not liable for the cotton stolen or lost after a deposit on the platform at a station house, unless it be shown that the railroad company or its agents had notice of the deposit, and received the cotton for transportation as a common carrier. And it was further held that whether there was a delivery or not to the common carrier for transportation was a question for the jury where there was conflicting evidence on that point. In *Montgomery & E. R. Co. v. Kolb & Hardaway*, 73 Ala. 396, the goods were delivered for shipment where it was the custom and usage of the common carrier to receive goods for transportation. It was held that there was a delivery to the company for immediate transportation, and the fact that it gave no receipt for the merchandise did not affect its liability, delivery having been satisfactorily shown. In *Merriam v. Hartford & N. H. R. Co.*, 20 Conn. *354, which was an action to recover for the loss of goods, it was contended that the carrier was not liable without express notice of the deposit. It appeared that the goods were delivered in the usual manner for transportation by a common carrier at its private dock in its exclusive use for the purpose of receiving the property to be transported. It was held that such delivery was a good delivery to the carrier, and rendered him liable for the loss of the goods. *Shaw v. Northern P. R. Co.*, 40 Minn. 144, was a suit to recover for the loss of personal baggage of a passenger delivered to the carrier and received solely for transportation, and not for storage. There was a recovery, and it was held

that the consent of the carrier, for its own convenience, to some delay in the transportation could not be used as a matter of defense. It seems clear from the foregoing review of plaintiff's authorities that they are not applicable to the undisputed facts as shown by the record herein. We are of opinion that this case should be ruled · by *Missouri P. R. Co. v. Riggs*, 10 Kan. App. 578, 62 Pac. 712, and that the evidence does not sustain the judgment.

For the foregoing reason, the judgment of the district court is reversed and the cause is remanded for further proceedings.

REVERSED.