## KANSAS CITY, M. & O. RY. Co. v. Cox.

No. 194.   Opinion Filed March 8, 1910.

(108 Pac. 380.)

1.   CARRIERS—Freight—"Delivery" to Carrier. The mere fact that the owner of goods has loaded them in a car for shipment, even though the carrier, by the owner's direction, has placed the car in a position convenient for such purpose, will not of itself be sufficient· to make the carrier an insurer of the goods loaded. Before the delivery will be deemed complete, the owner must not only have relinquished his control over the car, but notice that it was ready for shipment must have been given the carrier.

2.   SAME—Injury to Freight before Delivery—Liability of Carrier. The strict rules making the carrier an insurer of freight have no application where the relation of the parties is not that of carrier and consignee or owner, and in such cases the carrier is liable only for losses resulting from its own negligence.

(Syllabus by the Court.)

*Error from District Court, Woods County; John L. Pancoast, Judge.*

Action by John L. Cox against the Kansas City, Mexico & Orient Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*John A. Eaton* and *Dudley W. Eaton,* for plaintiff in error.

KANE, J.: This was an action, commenced by the defendant in error, as plaintiff below, against the plaintiff in error, defendant below, to recover damages for the destruction, by fire, of a certain lot of broom corn. After both sides had introduced their evidence and rested, the court instructed the jury that the evidence introduced showed that the railroad company was responsible for the car load of broom corn as a common carrier

and was therefore an insurer of the property; that under such circumstances it was the duty of the jury to return a verdict for the plaintiff for the value of the broom corn, stating the value thereof to be $575.25. The jury, without retiring, brought in a verdict in accordance with the instructions of the court, upon which judgment was duly entered. To reverse this judgment this proceeding in error was commenced.

It is stated by counsel for plaintiff in error, in their brief, and, as counsel for defendant in error have filed no brief calling our attention to any discrepancy in the statement, we take it to be true, that there was evidence introduced at the trial reasonably tending to prove that on the 26th or 27th of January, 1906, pursuant to the order of the plaintiff, a car was placed upon the side track by the defendant at a broom corn platform erected by the defendant on the east side of one of its side tracks for the purpose of enabling shippers to conveniently and easily load the car with broom corn; that on the next day Mr. Greenlee, acting as the agent for the plaintiff, loaded some broom corn in said car. On the next day, to wit, the 28th day of January, six more bales were loaded. On the 29th day of January, more broom corn, enough to finish the car load, was loaded into the car, after which the door to the car was closed. After finishing loading the car, the plaintiff, or the party employed by him to do the loading, closed the door of the car and notified Mr. Cox, the plaintiff, that the car was loaded, but did not notify the agent of the company that the car was loaded, and did not give the agent any information as to the destination of the car or the name of the consignee. The last time that Mr. Cox saw the car was Saturday, January 27th, about noon, at which time the car was all loaded except about 15 bales. Cox did not notify the agent of the company that the car was loaded, nor did he notify him who the consignee of the car was to be, or where it was to go. The railway company had not issued a bill of lading, and Cox had not paid the freight. Cox had been for some time shipping broom corn from Fairview, and it was his custom when the cars were loaded to notify the agent that they were loaded, and give him the name of the consignee, the

route the car was to take, and its destination; but none of these things had been done with reference to this car. The car was destroyed by fire about 2 o'clock in the morning of January 30th; the facts up to that time being as above stated. We are of the opinion that this evidence was sufficient to carry the case to the jury.

From the authorities cited by counsel for plaintiff in error, it seems clear that, before the railway company could be held liable as a common carrier, it must appear that it had been notified that the broom corn was ready for shipment or apprised of the name of the consignee. Hutchinson on Carriers (3d Ed.) § 125, pp. 122, 123, states the rule as follows:

"When the owner of the goods has done all in his power and all that he is required to do by his understanding with the carrier or the usage of the business to further the shipment, and it becomes then the duty of the carrier to do whatever else is necessary to put them in transit, the delivery and acceptance will be considered as complete from the time the carrier is informed that they are ready for him. The mere fact, therefore, that the owner of the goods has loaded them on a car, even though the carrier by the owner's directions has placed the car in a position convenient for such purpose, will not of itself be sufficient to constitute a delivery. Before the delivery will be deemed complete the owner must not only have relinquished his control over the car, but notice that it was ready for shipment must have been given the carrier. Thus, where it was the course of business for a railroad company, when required to do so, to send its cars upon a side track at the place of shipment to receive cotton for transportation, and for the shipper there to load upon them the freight, make out a manifest, and leave it with the agent of the company, who then had the bales counted, signed bills of lading, and sent locomotives to remove the cars thus loaded and place them in the train destined to the point to which the shipments were to be made, it was held that the delivery was complete as soon as the cotton was put upon the company's care in this manner by the shipper and the company's agent informed of the fact. And where the owner of lumber ordered a car in which to load lumber for the purpose of shipment, and the carrier, in pursuance of such order, placed a car on one of its side tracks for such purpose, and after the car was loaded, but before the carrier had been notified that it was ready for shipment, or had been apprised of

the name of the consignee, it caught fire, and the lumber was destroyed, it was held that as the carrier had not been notified that the car was ready for shipment, nor the name of the consignee given him, there was not such a delivery of the goods as to render him liable as a common carrier."

The case last referred to in the text is *Basnight v. Railroad Co.*, 111 N. C. 592, 16 S. E. 323. Mr. Justice McRae, who delivered the opinion of the court, in discussing this proposition, says:

"Taking the facts most strongly in favor of the plaintiff, he asked of the defendant's freight agent a car to load lumber to go to Philadelphia. The agent pointed out to the plaintiff a car which he might use for the desired purpose. The plaintiff loaded the car with lumber, and finished on the night of the 24th of December, but did not notify the defendant's agent that the car was ready for shipment nor of the name of the consignee. Treating the loading of the car upon defendant's track as a delivery to defendant and an acceptance, it was not yet ready for transportation, for the defendant had not been notified of its readiness nor to whom it was to be shipped. It was necessary for the defendant to await further orders before shipment. Where goods are delivered to a common carrier to await further orders from the shipper before shipment, the former, while they are so in his custody, is only liable as warehouseman. *O'Neill v. Railroad*, 60 N. Y. 138; *Wells v. Railroad,* 51 N. C. 47, 72 Am. Dec. 556; Angell on Carriers, § 129. He is only responsible as carrier where goods are delivered to and accepted by him in the usual course of business for immediate transportation."

Besides the foregoing authorities, counsel cites *Stapleton v. Grand Trunk Ry. Co.,* 133 Mich. 187, 94 N. W. 739; 5 A. & E. Enc. Law, p. 184; *Grosvenor v. New York Central Ry. Co.,* 39 N. Y. 34; *Tate & Co. v. Yazoo, etc., R. R. Co.,* 78 Miss. 842, 29 South. 392, 84 Am. St. Rep. 649; *St. Louis, Iron Mt. & So. Ry. Co. v. Murphy,* 60 Ark. 333, 30 S. W. 419, 46 Am. St. Rep. 202; *Mo. Pac. Ry. Co. v. Riggs,* 10 Kan. App. 578, 62 Pac. 712; and several other cases—all of which seem to be in point in their favor. The relation of common carrier and shipper not having arisen, the railway company's liability was that of a warehouseman, and it was only liable for failure to exercise ordinary care.

It was error to charge it with a higher degree of responsibility.

"The strict rules making the carrier an insurer of safe delivery of goods intrusted to it have no application where the relation of the parties is not that of carrier and consignee or owner, or where the relation, though previously existing, had come to an end at the time the delivery was made. In such cases the carrier is liable only for losses resulting from its own negligence." (5 A. & E. Enc. of L. 212.)

There were several other errors assigned by counsel; but, upon the relation of the parties being fixed, they are not liable to appear again. We do not, therefore, feel called upon to discuss them.

The judgment of the court below is reversed, and the cause remanded, with directions to grant a new trial.

Dunn, C. J., and Hayes and Turner, JJ., concur; Williams, J., disqualified, not sitting.