# Dunnington & Company v. Louisville & Nashville Railroad Company, et al.

(Decided April 24, 1913.)

## Appeal from McCracken Circuit Court.

1.  Carriers—Delivery of Freight to For Shipment—When Liability of Carrier for Loss of Goods Begins.—A common carrier of goods is not liable to the shipper for their loss or destruction without negligence on its part until they have been actually or constructively delivered to it by the shipper and either actually or constructively accepted by it. In other words, the common law liability of the carrier as an insurer of freight does not attach until the freight has been delivered to it for carriage either actually or constructively. But it is not essential that there should be proof of actual delivery of the goods or evidence that the carrier had taken physical possession of them if it be shown that there was a constructive delivery, as when the goods are placed at a point at which the carrier is in the habit of receiving them or at which, by its course of conduct, it has led the shipper to believe that it would receive them.

2.  Carriers—Bill of Lading—Effect of.—The issual of a bill of lading by the carrier is not necessary to show delivery of goods to it or its acceptance of them. A bill of lading is merely evidence of the fact of delivery and acceptance, and the issual of a bill of lading is not conclusive evidence of delivery to or acceptance by the carrier, nor is the non-issual of a bill of lading conclusive of the fact that there has been no delivery or acceptance.

BENNETT H. YOUNG, MARION W. RIPY and H. G. BEDINGER for appellants.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellants, having made a contract to ship a large number of hogsheads of tobacco to Italy, entered into arrangements with the Louisville & Nashville Railroad Company for the transportation of the tobacco, a part of which was to be shipped from Paducah, Kentucky to Pensacola, Florida. The tobacco that was to be shipped from Paducah was to be loaded by appellants from their warehouse into cars set on a switching track, operated by the appellee, Illinois Central Railroad Company, and after the cars were loaded they were to be moved by this company to the tracks of the appellee, Nashville, Chattanooga & St. Louis Railroad Company and by it

transported to Nashville, Tennessee, where the cars were to be delivered to the Louisville & Nashville Railroad Company for transportation to Pensacola.

Some time in May, 1911, appellants notified the railroad companies that they desired to ship a number of hogsheads from Paducah, and requested that cars be placed for this purpose on the track adjacent to their warehouse, and in compliance with this request, the Illinois Central Railroad Company placed four empty cars on the warehouse track. On the day the cars were placed on the track appellants loaded forty-six hogsheads of tobacco into them, completely loading two of the cars and partially loading a third car, intending to complete the loading on the following day. The night following the day on which the tobacco was so loaded, and before any of the cars had been moved, they were destroyed by fire, and the tobacco that had been loaded damaged to the extent of several thousand dollars.

Thereafter appellants brought this action against the appellee railroad companies to recover the loss they had sustained by reason of the damage to the tobacco by the fire, and upon a trial of the case, after all the evidence for both parties had been introduced, the trial court instructed the jury to find a verdict for the railroad companies, and the principal error assigned on this appeal relates to this ruling of the trial court.

On the trial E. B. Osborne, train master for the Illinois Central Railroad, introduced as a witness for appellants, said that he did not know who owned the siding on which the cars were placed, or whether it was owned by the railroad company or the factories adjoining it, but that cars were placed on it when called for by the proprietors of the warehouse, and that he had the cars in which the tobacco was to be loaded placed on the siding for the purpose of loading them with tobacco. That he did not have any notice or information that the cars were loaded or ready for shipment at the time of the fire.

Dickerson, an employe of appellants, and who had charge of the loading of the tobacco for them, said that it was customary for the Illinois Central Railroad to put cars on the siding when ordered and to take them out when loaded; that some of the cars placed there to be loaded had been loaded but others had not. He further said that it was customary to notify the railroad company when cars were loaded and ready for shipment, but he did not know that any notice had been given the carrier.

that the cars destroyed were loaded or ready to be moved.

Barren, another witness for appellants, and one of the employes of the warehouse owners, said that he was in charge of the loading of the cars, and that two of them had been fully loaded and one partially loaded, and that after the cars were loaded he closed the doors of the cars and reported the fact that they were loaded to his employers, but not to any agent of the railroad companies.

F. E. Wayland, a witness introduced for the railroad company, testified that he was freight agent at Paducah, and that it was customary for warehousemen and shippers, on whose sidings cars had been placed for loading, to notify him when the cars were loaded and ready to be moved, and that he had received no notice that this tobacco was loaded or ready for shipment at the time it was destroyed, and did not know until after the fire that some of the cars had been loaded.

Other witnesses qualified to testify as to the custom and conditions prevailing, said that cars that had been put on sidings to be loaded were not moved by the railroad company until notice had been given that they were loaded.

It will thus be seen that the undisputed facts show that all of the tobacco intended to be shipped in the cars had not been loaded, and that although it was the custom and practice to give notice to the railroad company when cars were loaded and when they were ready to be moved, that no notice was given to the railroad company before the fire that these cars were loaded or that they were ready to be moved. It is also conceded that no bill of lading had been issued for the tobacco.

It is, of course, true that the railroad company, when it put these cars on the siding, had notice that they were placed there for the purpose of being loaded, and to be moved after being loaded, but there is no evidence that it was the custom of the railroad company to take charge of a car until notified that it had been loaded, or of a custom on the part of the railroad company to treat freight, when loaded in a car, as this tobacco was, as delivered to or accepted by it. Nor is it shown that the railroad company had set apart this siding as a place at which freight should be treated as delivered to it when loaded in cars.

But notwithstanding these uncontradicted facts, and the further admitted fact that the fire was not caused by

the negligence or carelessness of either of the companies, it is contended by counsel for appellants that as soon as the tobacco was loaded in the cars the railroad companies as common carriers became liable for the safe keeping and safe carriage of the tobacco, although no bill of lading was issued or requested, or notice given to the railroad companies or either of them that the tobacco or any of it had been loaded or that it was ready for shipment. While counsel for the railroad companies insist that liability does not attach to a common carrier in a case like this until it has issued a bill of lading for the freight, or it has been delivered to and accepted by it for shipment, or it has been notified that it is ready for shipment.

The law applicable in cases.like this is that a common carrier of goods is not liable to the shipper for their loss or destruction without negligence on its part until they have been actually or constructively delivered to it by the shipper and either actually or constructively accepted by it. In other words, the common law liability of the carrier as an insurer of freight does not. attach until the freight has been delivered to it for carriage either actually or constructively. Hutchinson on Carriers, Vol. 1, sections 113-115; Burrowes v. Chicago R. R. Co., 85 Neb., 497, 34 L. R. A. (n. s.), 220; Kansas City R. R. Co. v. Cox, 25 Okla., 774; 32 L. R. A. (n. s.), 313; American Lead Pencil Co. v. Nashville Ry. Co., 32 L. R. A. (n. s.), 323; 134 S. W., 613.

It is not, however, essential to fix the liability of the carrier for the loss of goods that there should be proof of actual delivery of the goods to the carrier or evidence that the carrier had taken physical possession of the goods or the car in which the goods are loaded. It will be sufficient to charge the carrier with responsibility for the loss of the goods if it is shown that there was a constructive delivery of the goods or of the car containing the goods. For example, the carrier may, by virtue of a custom acquiesced in or sanctioned by it or by its course of dealing, be deemed to be constructively in the possession of goods when they are placed at a point at which it was in the habit of receiving them, or at which, by its course of conduct, it had led the shipper to believe that it would receive them. Merrian v. Hartford R. R., 20 Conn., 354, 54 Am. Dec., 344; Montgomery R. R. Co. v. Kolb, 73 Ala., 396, 49 Am. Rep., 54.

Nor is the issual of a bill of lading by the carrier necessary to show the delivery of the goods to it or its acceptance of them. A bill of lading is merely evidence of the fact of delivery and acceptance, and the issual of a bill of lading is not conclusive evidence of delivery to or acceptance by the carrier, nor is the non-issual of the bill of lading conclusive of the fact that there has been no delivery or acceptance: 6 Cyc, page 417.

Applying to the facts these principles of law, we think the appellants failed to make out a case, or, in other words, failed to show a delivery of the goods to the carrier either actually or constructively or according to a custom or course of dealing. Under the evidence the tobacco in these cars was in the possession and control of the appellants, as much so as if it had not been removed from the warehouse to the cars. It had never come into the custody of the railroad company; and hence the ruling of the trial court was proper.

Counsel for appellants strongly rely on the case of Pittsburg, C. C. & St. L. Ry. Co. v. American Tobacco Co., 126 Ky., 582, as authority for the proposition here asserted by them, but we do not find in that case anything in conflict with the views we have expressed. In that case, it appears from the opinion, that the American Tobacco Company had tobacco stored in a warehouse connected with the railroad's line of track by a siding, and that cars were placed on this siding by the railroad company for the purpose of being loaded with tobacco. The tobacco company was notified by the warehousemen that the tobacco was loaded, and thereupon it prepared a bill of lading in the customary form and presented it to the agent of the railroad company for signature, who signed and delivered it. At the time the bill of lading was issued the loading of the cars had not quite been completed, and a few hours after they had been loaded and after the issual of the bill of lading, but before the cars were removed from the warehouse siding, they were destroyed by fire and the tobacco company brought suit against the railroad company to recover for the loss. In holding the railroad company liable on the ground that the tobacco had been delivered to it and its liability as an insurer thereby fixed, the court said:

"Nor do we find merit in appellant's contention that it was not notified of the loading of the tobacco after it was loaded. It was notified of the shipper's purpose to

load it at the warehouse, and placed its car there to receive it. It signed the bill of lading evidencing its receipt, wihch was of itself notice that the car had been or was being loaded. When the ear was loaded and sealed, a, further notice of that fact was not necessary to apprise the carrier of what it already knew, namely, that it was ready for shipment; for notice might be given in advance, or might even be waived. When the tobacco was actually delivered into the carrier's car in accordance with the bill of lading, its physical delivery to the carrier for the purpose of transportation was completed. The prima facie character of the bill of lading became absolute upon proof of the subsequent actual delivery in accordance with its terms, the delivery being in such close proximity to the issuing of the bill as to be for all practical purposes a part of a single transaction. The doctrine that an acceptance by the carrier is essential to the creation of its contract liability is sound and undisputed. It would be most unjust if the shipper could deposit his goods in the carrier's car without notice to the latter, and fix a heavy liability upon it as an absolute insurer, while it was ignorant of the fact that it was expected to take charge of the goods for shipment. But the acceptance need not always be shown to have been by an express act. It may be presumed, when the goods are left in the usual place in accordance with the contract or custom of the carrier to so receive them.''

Nor does the case of Illinois Central Railroad Co. v. Smyser & Co., 38 Ill., 354, sustain appellant's contention. In that case, as here, the car was placed in the side track to be loaded, and after it was loaded but before a bill of lading was made out, the car was destroyed by fire, and the railroad company was held liable upon the ground that under a custom prevailing at the place where the loss occurred, the car should be treated as having been delivered to the railroad company when loaded, although it had not taken physical possession of it.

It is further complained that the court committed error in refusing to permit appellants to prove that Osborne, an employe of the railroad company, introduced by appellants as a witness, said, while the fire was burning, that he could have gotten the cars that were loaded out of danger except that the couplers were defective. Osborne denied having made such a statement, and it was clearly incompetent to show that he had made this

statement as substantive evidence, although it might have been admissible for the purpose of impeaching his credibility as a witness, if he had stated that the couplers were not defective. If the company was negligent in failing to have its cars in good repair, and its negligence in this respect contributed to or caused the loss of the tobacco, this fact could not be established by proving that an employe of the railroad company said the tobacco could have been saved except for defects in the cars; and there was no evidence whatever of negligence on the part of the railroad company in respect to these cars except the statement it was avowed Osborne made to certain witnesses that except for the defective coupler the cars could have been moved before the fire.

Upon the whole case we find no reason for disturbing the judgment appealed from, and it is affirmed.