## Nelson v. Chesapeake & Ohio Railway Company.

(Decided February 4, 1914.)

### Appeal from Fayette Circuit Court.

Railroads—When Not Liable for Contents of Loaded Car.—When goods are loaded on a freight car at a warehouse on a side track, and the company is notified to take out the car and put in another, the railroad company when this is done, does not become liable as a carrier for the contents of the loaded car until shipping directions are given so that the railroad company may know to whom the car is to be shipped.

SAMUEL M. WILSON for appellant.

SHELBY & SHELBY and R. L. NORTHCUT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

In July, 1911, W. Bush Nelson, of Lexington, Kentucky, sold to the James Thompson Company of West Valley Falls, New York, eight carloads of hemp to be delivered in August. Nelson met the general agent of the Chesapeake & Ohio railroad company on the street and told him that he would want cars for making the shipment during the next month. In the latter part of July, Nelson's clerk by telephone notified the shipping clerk of the railroad company that he would want two cars the next week. The shipping clerk said he did not know anything about the agreement with Mitchell, but he had two cars put in the next week at Nelson's warehouse, which were loaded and billed out. The next week two other cars were put in, loaded and shipped by the company. On Saturday, August 12, a fifth car was at Nelson's request placed by the company on the switch passing his warehouse door, and this was loaded on the following Monday. When this car had been loaded the railroad authorities were so notified, and asked to put in another car for loading. This occurred during the forenoon, but nothing having been done by noon, they were called up again over the telephone, and in response to the second request, they took out the car that was standing at the warehouse door, set an empty car in its place, and then pushed the loaded car back on the switch and left it standing on the switch some feet in front of the car that was to be loaded. While things were in this condition, a fire broke out in an adjoining property, which spread rapidly, and was communicated to the loaded car of hemp before it could be moved from the place where it was. The railroad company in a few minutes moved the car to a point where water could be thrown upon it and the fire was put out, but the hemp was considerably damaged. To recover for the loss which amounted to $800.00, Nelson brought this suit against the railroad company. There was no proof of any negligence by the railroad company, and the question of its liability depends on whether the hemp had been delivered to it for transportation, and the liability of a carrier had attached. A carrier is an insurer of the goods delivered to it for transportation; a bailee is only liable for negligence. It is conceded that the railroad company is not responsible unless the goods had been delivered to it as a carrier. In Mt. Vernon Co. v. Alabama Great So. R. R. Co., 29 Ala., 296, the rule is thus stated:

"The duties and obligations of a common carrier do not commence until there has been a complete delivery of the goods, until. they are placed in his custody and under his exclusive control for immediate transportation. Though the goods may be delivered if transportation is to await shipping orders or directions, or some act to be done by the consignor, before they are forwarded; or if they cannot be at once put *in transitu,* because of the failure of the shipper to give shipping orders or directions, the carrier is liable only as bailee until such orders and directions are given, or until he is informed to what place the goods are to be forwarded, and to whom delivered. The strict responsibility of a common carrier arises concurrently with the duty of immediate transportation, and this duty does not arise so long as anything remains to be done by the consignor before the goods can be intelligently started on the route to their destination.''

(To same effect see Tate v. Yazoo, Etc., R. R. Co., 84 Am. St. Rep., 649; Barron v. Eldridge, 100 Mass., 445; Hutchinson on Carriers, section 152.)

All that had transpired between the shipper and the railroad company in regard to this car had passed over the telephone, and was in substance that the car was loaded and that the company was requested to take it away from the warehouse and set in another car. Nothing was said about the shipment of the car or where or to whom it was to go. It is insisted that the railroad company knew where the car was to go because Nelson had told the freight agent that he wanted eight cars to ship to the Thompson Company in August, and the four cars which had been loaded had been so shipped. But although Nelson had told the agent this, he could not know from this that the car which was loaded on August 14 was to be one of the cars to go to West Valley Falls, N. Y. Either he or the Thompson company might have desired to send this car to some other place. The regulations of the Interstate Commerce Commission required the railroad company to allow the shipper to route the car and only allowed the railroad company to route the car when the shipper had failed to do so. If the railroad company had sent this car on to the Thompson Company at West Valley Falls, New York, by a route selected by it, and a loss occurred, the loss would have fallen on the railroad company at all events, or if the railroad com-

pany had shipped the car as the other four cars had been routed and it had turned out that Thompson did not want the car to go to New York, it would have been at the risk of the railroad company. In addition to this the uniform mode of business between Nelson and the railroad company was this: When a car was ready for shipment, Nelson made out a shipping order signed by him or his agent by which he requested the railroad company to ship the car giving the name of the consignee, its destination and other information required. He also at the same time filled out a blank bill of lading and memorandum to be signed by the agent of the railroad company when he delivered to the agent the shipping order, the three papers being blanks furnished by the railroad company, the printed part being different but the blanks being filled out alike. Nelson kept the memorandum; he mailed the bill of lading to the consignee, and the railroad company kept the shipping order and from it the way bills were made out. The other four cars had been shipped in this way. No shipping order had been made out for this car; no bill of lading or memorandum had been filled out or signed by the railroad agent or tendered to him for signature; nothing had occurred except the verbal notice over the telephone to take out this car and put in another. Under the authorities above cited the car had not been delivered to the railroad company for transportation, and its liability as a carrier on these facts had not attached. The circuit court properly so held. Dannington & Co. v. L. & N. R. R. Co., 153 Ky., 388.

Appellant especially relies on Railroad Co. v. Murphy, 46 Am. St. Rep., 202, Illinois Central R. R. Co. v. Smyser, 87 Am. Dec., 301, and Schmidt v. Chicago N. W. R. R. Co., 90 Wis., 504. In the Murphy case, the court said:

"When the shipper surrenders the entire custody of his goods to the carrier for immediate transportation, and the carrier so accepts them, *eo instanti* the liability of the common carrier commences. When this occurs the delivery is complete, and it matters not how long, or for what cause, the carrier may delay putting the goods *in transitu;* if a loss is sustained, not occasioned by the act of God or the public enemy, the carrier is responsible. But, on the contrary, as there is no divided duty of safe keeping, and no apportionment, in the event

of a loss, between the owner and the carrier, the surrender of control over the goods by the shipper must be such as to give the carrier the unqualified right to put at once *in itinere,* and the carrier must have received them for that purpose. So that, when goods are delivered to the carrier that are not yet ready for shipment, awaiting further orders from the owner, or the happening of some contingency or compliance with some condition before they are ready to be moved, the liability of the carrier in the mean while can be no greater than that of an ordinary depositary or bailee. These general principles are recognized by all the authorities.''

In that case the carrier was held liable because shipping directions had been given, and in view of the mode of business between the parties the court concluded that the carrier held the goods for immediate transportation; while in the case at bar no shipping directions had been given and by the course of business between the parties, shipping directions were given and a bill of lading taken before the car was routed. In the Smyser case the property was held to be in the possession of the carrier for immediate transportation in view of the mode of doing business followed by the parties. In that case there were no regulations by the Interstate Commerce Commission as to the routing of cars; this could then be done by the carrier. In the Schmidt case the court thus stated the law:

''The rags were originally delivered in bales, to be kept in the warehouse until further orders. Until such further orders were received the defendant's responsibility for them was that of a warehouseman only. Upon receipt of orders to ship the goods so in warehouse, the responsibility as common carrier attaches, although the goods remain unmoved in the warehouse. If, without putting them in transit, the carrier for his own temporary convenience, keeps them in store, still the liability of a carrier attaches. The more stringent liability of a common carrier attaches whenever the duty of immediate transportation arises.''

The evidence there showed that the owner notified the carrier to load the bales in a car and ship them. The carrier replied that he could not load them until the next morning. It was held on this evidence that it was a question for the jury whether the delay was for the defendant's convenience and acquiesced in by the plaintiff, or

was really against his will. We do not see that any of these cases conflict with those we have cited, or the conclusion we have reached. To same effect are Southern R. R. Co. v. Smith, 125 Ky., 656; Pittsburg, Etc., R. R. Co. v. Am. Tobacco Co., 126 Ky., 582; Cincinnati Grain Co. v. L. & N. R. R. Co., 146 Ky., 237.

Judgment affirmed.