**FORT WORTH & D. C. RY. CO. v. TOMSON.**
(No. 2088.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 28, 1923. On Motion for Rehearing, April 11, 1923. Rehearing Denied April 25, 1923.)

1. Carriers ⚫113—Liability of carrier begins upon complete delivery to it.

Before the strict liability of a carrier as such begins, there must be a complete delivery to it of the shipment for transportation in the ordinary course of its business.

2. Carriers ⚫134 — Evidence of completion of loading of one car held not to show delivery for immediate transportation.

Evidence that carrier was not notified of the completion of the loading of one car containing 35 bales of cotton, and that the parties contemplated shipment of 57 bales, *held* not to show such delivery for immediate transportation as would render carrier liable as such for destruction of cotton in the car the loading of which was completed.

3. Carriers ⚫135—Measure of damages to shipper for damaged goods sold by shipper as salvage stated.

Where, by agreement with a carrier, the shipper sold damaged goods, the measure of damages against the carrier for loss would be the value of the goods delivered less the salvage realized.

4. Carriers ⚫135, 146—Measure of damages for loss or injury to shipment is fixed at place of destination unless carrier is held liable as bailee.

Generally, measure of damages for loss or injury as a carrier should be fixed as of the place of destination; but, if the carrier should be held liable as a warehouseman or bailee, the value of the goods at shipping point would furnish the proper basis for estimating damages.

5. Damages ⚫188(2)—Evidence which furnishes reasonable approximation of value of goods damaged is sufficient proof of value.

To recover damages to cotton, proof as to the value of the cotton which would depend on its weight, grade, price per hundredweight, etc., should be as specific as practicable; but absolute exactness is not required, and evidence which furnishes a basis for a reasonable approximation of the amount of damages would be sufficient.

On Motion for Rehearing.

6. Appeal and error ⚫1177(6), 1178(8)— Where shipper's evidence justified directed verdict for carrier and shipper abandoned other claim of liability, cause will not be remanded for trial on abandoned claim.

Where, in an action against a carrier for loss of goods while in the alleged possession of a carrier, plaintiff's fully developed evidence was insufficient to substantiate his claim so as to justify the trial court in directing a verdict for the carrier and plaintiff on the trial expressly abandoned another claim of liability, it would be improper for the appellate court to remand the cause to enable plaintiff to present evidence on the abandoned issue or to amend his pleading so as to present new issues of liability. Rev. St. art. 1626.

Appeal from District Court, Hall County; J. A. Nabers, Judge.

Action by M. E. Tomson against the Fort Worth & Denver City Railway Company. Judgment for plaintiff, and defendant appeals. Judgment reversed and rendered for defendant.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, Thompson, Knight, Baker & Harris, of Dallas, Turner & Dooley, of Amarillo, and Elliott & Moss, of Memphis, for appellant.

Presler & Hamilton, of Memphis, and Ocie Speer, of Ft. Worth, for appellee.

BOYCE, J. M. E. Tomson brought this suit against appellant railway company to recover damages to 35 bales of cotton, caused by fire. It was alleged that at the time of the damage the cotton had been delivered to the railway company for transportation and its liability as a common carrier had attached. In the alternative it was alleged that

the cotton was negligently set on fire by sparks escaping from one of defendant's engines. At the close of the evidence, claim of liability on the latter ground was abandoned by the plaintiff "for the purposes of this trial only." The trial court held that the evidence conclusively showed that the defendant was responsible for the damages to the cotton under its liability as a common carrier and submitted to the jury only the question of the amount of damages, and judgment was rendered for the plaintiff for the amount so found.

The first question for decision is whether the evidence conclusively shows such a delivery of the cotton to the railway company for transportation as that it would be liable as a common carrier for damage thereto. The plaintiff, desiring to ship 57 bales of cotton from Memphis, Tex., to Gohlman, Lester & Co. at Houston, Tex., employed Elmer Prater, a public drayman, to attend to the loading and shipment of the cotton from Memphis. Prater asked for two cars in which to load the cotton. It is in dispute as to whether the agent was informed as to the destination and name of the consignee of the shipment. The railway agent pointed out one car on defendant's loading and unloading switch track and informed Prater that he would have the other car ready when that one was loaded. Prater loaded 35 bales of cotton in this car, filling it full. He closed the doors and left the car about 11 a. m., intending to load the other car the next day. He did not notify the agent of the completion of the loading of the car, and no bill of lading for its shipment was called for before the fire. The cotton was partially destroyed and damaged by fire occurring some time during the afternoon of the day of the loading. It was the custom of cotton dealers at Memphis, including the plaintiff, loading and shipping cotton under the circumstances of this case, to prepare the bills of lading after loading and present them to the railway agent for execution. The agent would upon presentation of such bills of lading, check up the cotton, seal the cars, and then issue the bills. In some instances the bills of lading would be filled in by the agent on notice that the cotton was loaded. Prater testified that—

It was the custom of the railway company to accept his check of merchandise loaded by him for shipment. "When I would load a car, whatever it would be, I would go and tell them what it was loaded with, how many of whatever it was in it, and they would issue a bill of lading for it; that is the way they did me, and as far as I know that was their general custom."

The railway company, before the fire occurred, had moved the car, leaving it on the same track but about 200 yards from where it was standing when Prater finished loading it, and the car was in this new location

when it was burned. The railway agent explains this movement of the car in this way: The track had on it a number of cars, being loaded and unloaded; some of them ready for movement and some not. This car had not been reported ready for movement, and it appeared on the switch list marked, "Cotton—Loading—Leave." When the train crew came to switch the track, they took this car out in order to get at other cars that were ready to move and then put it back on the track, but did not get it in the exact place it was in before. After the fire the bill of lading was demanded and refused.

[1, 2] Before the strict liability of a carrier, as such, begins, there must be a complete delivery to it of the shipment for transportation in the ordinary course of its business. Hutchinson on Carriers, §§ 112, 113; 4 R. C. L. p. 688. It has been held, in many cases where there is no custom that controls the matter of delivery, that when the shipper undertakes, independently of the carrier, to load the goods on cars set on a switch track by the carrier for such purpose, at the request of the shipper, there is no delivery until the loading is complete and the carrier notified that the shipment is ready for movement. H. & T. C. Ry. Co. v. Hodde, 42 Tex. 467; Nelson v. C. & O. Ry. Co., 157 Ky. 256, 162 S. W. 1129; K. C. M. & O. R. Co. v. Cox, 25 Okl. 774, 108 Pac. 380, 32 L. R. A. (N. S.) 313, and note p. 318; American Lead Pencil Co. v. Railway Co., 124 Tenn. 57, 134 S. W. 613, 32 L. R. A. (N. S.) 323; Hutchinson on Carriers, § 125; 4 R. C. L. § 172, pp. 693, 694. The fact that the shipment has been only partially loaded at the time of damage may, under the foregoing circumstances, be important in determining whether there has been delivery of the part loaded. Dunnington v. L. & N. R. Co., 153 Ky. 388, 155 S. W. 751; Burrowes v. C., B. &. Q. R. Co., 85 Neb. 497, 123 N. W. 1028, 34 L. R. A. (N. S.) 220; Clara Turner Co., v. Railway Co., 86 Conn. 71, 84 Atl. 298, Ann. Cas. 1913D, 637. In this case it was evidently contemplated that the 57 bales of cotton would be covered by one bill of lading issued after the entire lot was loaded. So that the loading was not complete. The agent of the railway company was not notified of the completion of the loading of the one car with the 35 bales of cotton and would not be expected to start the car on its way without such notice and the issuance of a bill of lading. So we think there was no such delivery for immediate transportation as would make the railway company liable as a carrier.

A great many other propositions are presented, but we need discuss only in a general way such questions as may arise on another trial.

[3, 4] Under an agreement between the plaintiff and the defendant, the plaintiff took possession of the damaged cotton and

sold it through a cotton salvage company. The measure of damages, if defendant should be held responsible therefor, would be the value of the cotton delivered, less the salvage therefrom. The only proof of the value of the cotton delivered was that at Memphis. As a general rule, the measure of damages for loss or injury as a carrier should be fixed as of the place of destination. While perhaps the safest course would have been to apply such general rule in this instance, we would not be inclined to hold, under the circumstances, that the settlement of the damages on the value at Memphis would be reversible error. Railway Co. v. Lieurance, 80 Kan. 424, 102 Pac. 842; 10 C. J. 398. Of course, if the railway company should be held liable as a warehouseman or bailee in some character other than that of carrier, the value of the cotton at Memphis would furnish the proper basis for estimating the damages.

[5] Proof as to the value of the cotton delivered, which would depend on its weight, grade, price per hundredweight, etc., should be as specific as practicable. Absolute exactness, however, is not required, and evidence which furnishes a basis for a reasonable approximation of the amount of damages would be sufficient. Burr's Ferry v. Allen (Tex. Civ. App.) 164 S. W. 878; 17 C. J. p. 759, § 91.

Appellants request us to reverse and render the judgment. If, on another trial, the evidence should be the same as it appears in this record, it would be the duty of the trial court to direct a verdict for the defendant; but we are not convinced that the evidence on all phases of the case has been fully developed, and hence reverse the judgment and remand the cause for a new trial.

### On Motion for Rehearing.

[6] A consideration of the motion for rehearing has convinced us that we should have rendered judgment for appellant instead of remanding the cause for a new trial. We were convinced, and so stated in the opinion, that on the evidence presented the court should have given a peremptory instruction for the defendant. We were also convinced that the evidence as to the liability of the defendant as a common carrier had been fully developed, though we were not sure that plaintiff might not, on another trial, establish liability against the defendant on other grounds. But plaintiff, on the trial, expressly abandoned the other claim of liability set up in the petition, and we have been convinced that it would be improper for us to remand the case for the purpose of enabling the plaintiff to present evidence on this abandoned issue or to amend his pleading for the purpose of presenting new issues of liability. R. C. S. art. 1626;

Anderson v. Walker (Tex. Civ. App.) 70 S. W. 1003; Archenhold v. Smith (Tex. Civ. App.) 218 S. W. 808; Arno Co-operative Irrigation Co. v. Pugh (Tex. Com. App.) 212 S. W. 470; Mitchum v. C., R. I. & G. R. Co., 107 Tex. 34, 173 S. W. 878.

The motion for rehearing is therefore granted, and judgment rendered for the defendant.