## Hollis et al. v. Rash et al.

June 1, 1948.

G. R. Drinnon and Henry L. Bryant for appellants.

Robert J. Watson and E. P. Nicholson, Jr. for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

Appellant, located in Miami, Florida, at the time of the transaction involved was engaged in the sale of concentrated beverages used in making soft drinks. Appellee was a wholesale merchandise firm in Middlesboro, Kentucky, sometimes handling the character of goods handled by appellant. Both parties are partnerships. The controversy arose from refusal of appellee to pay balance on purchase of concentrated beverages. In plaintiff's petition it was charged that they had sold and delivered to appellee 515 cases of concentrated beverages for $3,446; that appellee had paid $1,400 on the account but refused demand for the balance of $2,046, for which sum judgment was sought.

Answer and amended answer made denial and plead in avoidance that defendant ordered from appellees certain concentrated flavors to be used in making beverages to be consumed in hot weather; that its order was made upon two conditions: That the goods were to be shipped at once and to be in appellee's place of business not later than July 20, 1944; it was agreed that no sales of the same kind of merchandise were to be made to other dealers in the same area. Defendant alleged that appellant had shipped the goods on the 23d, and they did not arrive until the 26th; that on the 20th it "promptly advised plaintiff to cut the order to 200 cases and if not shipped at once to cancel the entire order." It was also charged that plaintiff had sold the same merchandise to other dealers in the same territory. Demurrer to the answer was overruled.

Plaintiff replied, denying all allegations except that as to receipt of the order. This joined issue and after hearing proof the court instructed the jury to find for defendant, and upon their verdict judgment was entered. On appeal the contention of appellant is that the court was in error in directing a verdict for defendant and in overruling its motion for a verdict, and should have sustained its demurrer, insisted upon at close of proof, to the amended answer.

Plaintiff introduced only one witness, Mr. Rash, one of defendant's partners, who testified as if on cross examination; he said that the order for the concentrated flavors was made July 13, 1944, contained the words "at once," and "rush;" that the goods were received at his

warehouse and receipted for by an employee on July 26, while he was absent; that in the meantime there had been a cancellation of the order. The following letters were introduced; one from defendant of date August 12, inclosing a check for 200 cases, reads:

"Evidently there was some mistake in your office about the time of shipment of this order, any way. Although the order was given to your salesman July 13, the invoice is dated July 11. When we wired you July 20 to cut down the order because we did not receive it as promised, you told us that it had already been shipped, but we did not receive it until the 26th, and the truckman said it was not shipped until July 23. Please let us know what disposal you want made of the goods we have on hands."

A reply of August 18, acknowledging receipt of the check for $1,400, added:

"We note in your letter that you desire to return 310 cases because of the lateness in shipping same. You will note that the order was given our salesman July 13, and it was shipped out July 18, as per the photostatic copy of original bill of lading as attached.

"We did not get your wire until the 20th, therefore this merchandise was two days in transit before your wire was received and we had no way of cancelling same as the merchandise was well on the way to you. Incidentally you will note that the bill of lading was made out July 18, and signed by Robert Booth. The truckman probably said this merchandise was picked up on the 23d as he was tardy in making delivery of same. Trusting this is clear to you and awaiting your check, we remain * *"

The photostatic copy of what is termed the bill of lading is in the record. It does not appear to be a bill of lading in any sense of the word; it does not show delivery to or acceptance by a carrier. It is more in the nature of an invoice on the stationery of a wholesale produce dealer, and is dated July 18, 1944, and contained the words: "Ship to Warren Rash Co., Middlesboro, Ky.," followed by an itemized list of the goods ordered. It is endorsed "Warren P. Rash Co., Rob't Booth," without date. Booth was the employee who

received and stored the goods in defendant's warehouse. This exhibit throws little light on the case. The other exhibit filed was the order for the merchandise and bears date July 13, and contains the words "at once," and *"rush,"* apparently in the handwriting of the representative of a Louisville brokerage firm who took the order, according to the testimony of Mr. Rash.

At the close of Rash's testimony defendant moved for peremptory on the ground that the proof showed that "this order was reduced to the 200 cases he received." The court did not rule at the time and counsel for defendant then took Mr. Rash on direct examination. This testimony did not differ in the main from that above recounted. It was brought out that when the order was given it "was agreed that we would take the quantity of merchandise provided it would arrive in Middlesboro on the 20th, and that the agent would sell no other wholesaler in my entire territory," and that there had been sales to two other named wholesalers in the area. Mr. Rash explained his reason for wanting delivery at once or not later than the 20th, and said the representatives understood this and that when they later came he "could not use them." There were strenuous objections to questions and answers in relation to the alleged oral agreements between defendant and the salesman.

One question raised is whether or not the court was in error in overruling objections to the testimony that the agreement was that the goods should be in Middlesboro on the 20th of July, and that there would be no sales to other merchants in the area. The objection was based on the fact that there was filed with and made part of petition a copy of the written memorandum of sale signed by the party to be charged. KRS 361.040. We are of the opinion that the evidence to the effect that it was agreed "that the goods should be in Middlesboro on the 20th," and the evidence as to no sales to others, was incompetent. The rule is that parol evidence is not admissible to alter the terms of a written contract, unless the party complaining charges that its terms were not as therein expressed, and that omission was due to fraud, or mistake on the part of the adversary, or to mutual mistake. Barret v. Clarke, 226 Ky. 109, 9 S. W. 2d 1091, and citations.

There is much argument in briefs as to the application of various sections of the Uniform Sales Law. KRS 361.010 et seq. As for instance, appellant contends that under Sec. 361.460 the delivery of the goods to a carrier is deemed to be a delivery to the buyer, and that defendant was relegated to the remedies provided in Sec. 361.690, which relates to actions for breach of warranty. There was no question of warranty involved here. On the proposition of title passing to the buyer by delivery to a carrier, it is sufficient to say that there is no evidence here of a delivery to a carrier. A bill of lading is evidence of a delivery to and acceptance of freight by a carrier, and contract to carry safely and deliver. Pollard v. Vinton, 105 U. S. 7, 26, L. Ed. 968; Dunnington & Co. v. Louisville & N. R. R. Co., 153 Ky. 388, 155 S. W. 750.

Appellee also relied on numerous sections of the Sales law as upholding the court's ruling. To digest them all, as well as those suggested by appellant, would consume much time and space, and since it may be conceived that the court's withdrawal of the case from the jury was based on the evidence, we shall not discuss them.

This whole case turns on the question as to whether or not the telegram admittedly received by plaintiff on July 20th was in time for a cancellation of the order to the extent of all save 200 cases of the goods. This depends on the fact as to whether the order was shipped on the 18th or 23rd. The proof that it was shipped on the 18th was based on the statement in the letter that it "was shipped out on the 18th as per photostatic copy of the original bill of lading attached," which does not show receipt by a carrier on that date, and as far as the record shows the carriage was by a truck either of appellant or the produce company, and the letter of plaintiff says that the truckman said the shipment was picked up on the 23d, which would be after receipt of the telegram.

We may reach the solution of the case by taking up appellant's contention that its demurrer to the amended answer should have been sustained. Since we have concluded the evidence as to the agreement that the shipment should be in Middlesboro by the 20th, and as to

"no other sales" was incompetent, motion to strike would have been in order, and if made should have been sustained. However, since the amended answer alleged that the contract called for shipment "at once," and to "rush," and that this provision of the contract was not complied with, the court properly overruled the demurrer thereto.

It may be reasonably inferred from appellant's letter that had the telegram been received by it before the goods were in transit, as it claimed, the order would have been at least cut down to 200 cases. The appellant claims the shipment started on the 18th; appellee offers some proof that it started on the 23d, and there is no dispute as to the date of arrival. If it actually started on the 18th then it was in transit for at least seven days.

Boiled down to final analysis, the issue presented by the pleadings is whether or not appellant may recover for the 315 cases of beverage held in appellee's warehouse. Assuming without deciding that appellee had the right to cancel the order, then the question is, did appellant actually ship the goods before the telegram was received? This question is susceptible of much better proof than was adduced on the trial.

We are of the opinion that the judgment should be and it is reversed for new trial consistent with this opinion.