## The Michigan Southern and Northern Indiana Railroad Company v. Frederick Shurtz.

A railroad company are not liable as common carriers, for property deposited in their warehouse, to await orders from the owner for its transportion.

And where the Company are prohibited by their charter from charging as warehousemen for storage they can be liable as gratuitous bailees only, for property so deposited with them and awaiting orders.

*Heard December 2d and 3d. Decided December 9th.*

Error to St. Joseph Circuit, where action was brought by Shurtz against the railroad company, for the value of certain wheat.

The declaration was in substance, as follows:

*First Count.* That defendants being common carriers, received at White Pigeon 83 55-60 bushels wheat of plaintiff, to be taken care of, and safely and securely carried and conveyed to Toledo, and there delivered to plaintiff, for a consideration to be paid, but that not regarding their duty as such carriers, they so carelessly and negligently behaved and conducted themselves with respect to such wheat, that the same was wholly lost to plaintiff.

*Second Count.* Similar to the first, except that it alleged the undertaking to carry to such point on defendant's road as plaintiff should designate when defendants should be ready to carry the same, they not then being prepared so to do.

*Fourth Count.* That defendants, as common carriers, received said wheat, and gave therefor the following receipt:

"Mich. South. Railroad,

White Pigeon, Nov. 9, 1854.

Received of S. Cotterman, for account of Fred. Shurtz, 83 55-60 bushels of wheat to be forwarded to ——, without further liability after lake shipment or loss by fire.

A. A. Bean, *Agent,*

*Per* C. Dunwell."

That according to the custom of defendants the place

of destination of property was usually left blank in such receipts when the property was to be carried to Toledo, whereby they undertook to carry to Toledo. Breach as in the first count.

*Fifth Count.* That defendants as carriers received the wheat, to be safely and securely kept in their warehouse, and thence conveyed to such place on their road as plaintiff should designate when defendants should be prepared to carry the same, that they did not and would not furnish the requisite cars for carrying the same, though required so to do, but so negligently conducted themselves that the wheat became lost to plaintiff.

*Seventh Count.* That defendants as carriers, received the wheat and agreed safely and securely to keep the same in their warehouse, and safely carry to such place as plaintiff should afterwards designate. Breach, that they did not safely and securely keep the wheat, whereby it became lost to plaintiff.

*Ninth Count.* That defendants received the wheat to be taken care of, but took so little care thereof that it was destroyed, and lost to plaintiff.

*Tenth Count.* That defendants, as carriers, received the wheat and agreed to securely keep the same, and carry to Toledo within a reasonable time. Breach, that they did not securely keep, and did not carry within a reasonable time, and through their carelessness, negligence, and delays, the wheat became lost to plaintiff.

*Eleventh Count.* That the customary place to which wheat was carried by defendants for lake shipment was Toledo, and that by the receipt (above set forth) and the custom, they undertook to securely keep and carry said wheat to Toledo. Breach as in tenth count.

*Twelfth Count.* Like the eleventh, except that it alleged Monroe, instead of Toledo, to be the place to which the wheat was to be carried.

M. S. & N. I. R. R. Co. v. Shurtz.

The third, sixth and eighth counts were abandoned on the trial.

Plaintiff (below) gave in evidence the receipt above copied, and proved that a portion of the wheat therein mentioned remained in the warehouse of defendants on December 24th, 1854, when said warehouse was destroyed by fire. He was also permitted by the circuit judge, under objection that no such fact was alleged in his declaration, to give evidence tending to prove that before the fire he had directed the wheat to be sent forward to Toledo—the judge holding the evidence proper under the first count.

Plaintiff also, under exception, introduced evidence tending to prove the following facts : That defendants, at the date of the receipt, had insufficient facilities for forwarding the grain received by them; and that it was customary to give receipts for grain without specifying the place of destination, even when it was known to both parties. They also gave some evidence which they claimed tended to show negligence on the part of the company's servants, in the burning of the warehouse.

The circuit judge charged the jury among other things excepted to :

That if the wheat was received to be carried, and if that was the principal thing to be done, then defendants are liable for its loss, otherwise not:

That if defendants received the wheat to carry to Toledo, then they are liable, notwithstanding the agent may have given a receipt not authorized by the charter of defendants:

That if plaintiff, either at the time of the delivery of the wheat or afterwards, gave orders to the defendant to forward it to Toledo, then their liability as common carriers attached from the time of such orders, and they are liable for the loss.

That if defendants did not use ordinary care, (such

care as men of ordinary prudence take of their own property) in regard to the stove and fire in the office in the warehouse, and through the want of such care the warehouse and wheat were consumed by fire, then the plaintiff is entitled to recover, even though the defendants received the wheat as warehousemen.

The jury under the charge of the court returned a verdict for plaintiff.

*W. Wing, H. H. Emmons*, and *A. Pond*, for plaintiffs in error.

*Whittemore & Crosby*, for defendant in error.

MARTIN Ch. J.:

The principal question presented by this case, is whether the railroad company are liable as common carriers for the wheat deposited in their warehouse, to await orders for transportation, and a determination of what shall be its destination. We think they are not, nor should they be. By their charter the company have no right to charge as warehousemen, for storage of goods awaiting transportation; but this disability does not of itself create any liability. When the goods are delivered to be transported to a specified point, the liability of the company as carriers commences immediately; but if they are deposited to await orders — if the company can not carry them because ignorant of the contemplated destination, or because no destination has been concluded upon by the owner, it would be gross injustice to hold them subject to the extraordinary liabilities of common carriers, while thus awaiting the determination of their owner. While the wheat was lying in their warehouse awaiting the determination of Shurtz as to its destination, the company can not be regarded as any thing more than gratuitous bailees, and are liable only as such. If the intention of Shurtz can not be clearly seen to have been that it should be transported to any particular place, how can they

be seen to be carriers of it? Can the company be carriers of a thing not to be carried? But when Shutz had determined to what point he would have his wheat transported, and had notified the company of such determination, then their liability as carriers commenced, and it became their duty to forward it without delay. This is the obligation of their charter, and a want of facilities for transportation will not relieve them from that liability.

There is no count in the declaration which will authorize a recovery for the destruction of the wheat, held by the company to await orders for its transportation, charging them as carriers. The theory of the first count of the declaration,—and it is under that, that the court below held that this proof was admissible,—is that the company were common carriers for hire, and that the plaintiff caused the wheat in question to be delivered to them to be conveyed to Toledo; and that this they undertook to do; but so carelessly and negligently conducted, that the wheat was destroyed. And a like theory, viz., that the wheat was in the company's possession, subject wholly to their control, or to transportation at their convenience, and [according to their ability, runs through and characterizes all the other counts, except one, in the declaration.

This fundamental error renders it unnecessary to consider the other questions raised by the bill of exceptions.

The judgment should be reversed, and a new trial ordered.

The other Justices concurred.