Peelle, J.,
delivered the opinion of the court:
The claimant herein seeks a recovery for money earned in the transportation of freight which was withheld by the United States by way of reimbursement for the loss of certain property which was burned while in the depot of claimant at Pensacola, Fla., in November, 1897.
The goods for which the deduction was made were, on November 20, 1897, loaded by the defendants’ officers at the Pensacola Navy-Yard on a freight car of the claimant standing on the track of the Pensacola Electric Terminal Company, which extended from Fort Barrancas by way of the navy-yard to Pensacola and there connected with the claimant company. The goods so loaded were in packages and were addressed in the usual way of marking such packages to the United States depot quartermaster at New York City.
Said electric company was at that time under contract with the defendants to transport for them for the consideration of $400 per annum all passengers and freight for and on their account between the points named.
The car when so loaded was taken by an engine of said electric company over its track to Pensacola and there left on a spur track connecting with the main line of the claimant.
On November 22 the claimant, with one of its yard engines, hauled the car so loaded into its depot. The receiving clerk finding no directions accompanying the goods, caused a telephone message to be sent by the agent of said electric company therefor to the quartermaster at Fort Barrancas, who *413 bad charge of all transportation of Government property between that point and the navy-yard, and that officer promised that a bill of lading would be sent to the office of said electric company, but none was received up to the afternoon of November 23, and at that time the goods were removed from the car by the receiving clerk of the claimant and stored in its depot to await instructions.
The bill of lading iras called for by the claimant through the agent of said electric company several times during November 23 and 24, but none came.
On the night of'November 24 the depot was accidentally, through no fault of the claimant, burned, and the contents, including the goods in question, were destroyed.
The next day, November 25, the receiver of said electric company having general charge of its affairs received by mail at his office a bill of lading for the intended shipment of goods so burned.
The claimant’s invariable custom at Pensacola was, as to any and all freight delivered to it for shipment, to require a bill of lading before forwarding the goods or receiving them for shipment.
No agent of the claimant or of said electric company knew of the loading of the goods in question on claimant’s cars, and no one consented that the same should be shipped without shipping directions, according to its usual custom.
In the settlement of the claimant’s account the Auditor for the Navy Department, to whom the report of the board of survey was sent, decided that the loss was chargeable to. the claimant and fixed the value at $1,606.15 and deducted the same from the amount due the claimant on certain other settlements.
The findings present the- question as to whether the liability of the claimant as custodian of the goods of the Government-in the manner stated was that of a common carrier or a warehouseman.
The general rule is that the liability of a common carrier in respect of goods intrusted to it begins when there has been a complete delivery to the carrier or its aiithorized agent for immediate transportation; and to complete such delivery “ it *414 is essential that the property be placed in a position to be cared for, and under the control of the carrier or its agent, with its knowledge and consent.” (Grosvenor v. R. R. Co., 39 N. Y., 34.)
The rule, as well as the reason therefor, appear well stated in the case of the Missouri Pacific Railway v. McFadden (154 U. S., 155-160), where the court, following Hutchison on Carriers, 82, says:
“ The duties and the obligations of the common carrier with respect to the goods commence with their delivery to him, and this delivery must be complete, so as to put upon him the exclusive duty of seeing to their safety. The law will not divide the duty or the obligation between the carrier and the owner of the goods. It must rest entirely upon the one or the other; and until it has become imposed upon the carrier by a delivery and 'acceptance he can not be held responsible for them.”
And this doctrine, the court in that case says, “ is sanctioned by a unanimous course of English and American decisions.”
If upon the acceptance of goods for immediate transportation the carrier, for his own temporary convenience, places them in store, that will not release him from the liability of a common carrier, as the delivery being complete for the purpose stated the liability of a common carrier attaches. (Rodgers v. Wheeler, 52 N. Y., 262.)
If, however, there is anything remaining to be done on the part of the shipper before the goods can be transported the delivery is not complete, and this was the effect of the ruling in the case of the Mich. Southern, etc., R. R. Co. v. Schurtz (3 Cooley, 7 Mich., 515), where it was held in substance that a railroad company was not liable as a common carrier for property deposited in its warehouse to await the orders of the owner for transportation.
In the case of St. Louis, Alton and Terre Haute R. R. Co. v. Montgomery (39 Ill., 335-337), a shipper had delivered to the railroad a quantity of hay which was placed on platform cars for shipment, and the next day, when the company was ready to send the hay forward the shipper requested the company not to take the hay away until he could first see the *415 party to whom it was sold, which request was complied with, and the next day the hay was ignited by sparks from a passing locomotive and a portion of it burned, without fault on the part of the company. The owner brought suit to recover for the value of the hay burned and in-the court below obtained a judgment, but on appeal the Supreme Court reversed the judgment, saying, among other things:
“ A common carrier, it is true, is liable for all losses not arising from ‘ the act of God ’ or the public enemy, in neither of which categories would the loss in the case before us fall. But the technical liability of a common carrier does not attach until the delivery to him of the property is complete. If, for example, the same person is common carrier and warehouseman, and he- receives goods to be forwarded when he has orders from the owner, his liability in the meantime is that of a warehouseman and not that of a common carrier. He must exercise reasonable care, but he is not an insurer against all losses except those arising from ‘ the act of God ’ or the public enemy. * * * From the moment that request was made, and while the defendants were detaining the hay in consequence of it, they were only liable for losses which might have been guarded against by the exercise, on their part, of ordinary care and diligence.”
In the present case there was no express request by the Government or its agent to hold the goods which had been loaded on the claimant’s car without its knowledge or that of its authorized agent, but after the claimant became advised that the goods were loaded on its car the responsible officer of the Government ivas at once and frequently requested to send a bill of lading, which was delayed; and in the meantime the goods were unloaded from the car and stored in the depot of the claimant where, before the receipt of the bill of lading the depot, with all its contents, including the property of the defendants so unloaded therein, were burned.
“ Whether the responsibility be in one capacity or the other is seldom a matter of express agreement between the parties. It arises out of the relation which the parties sustained and the duties which the law imposes.” (Barren v. Eldridge, 100 Mass., 455-458.)
Assuming that the claimant was a warehouseman for hire, it was only bound to ordinary diligence — that is to say, such *416 care and diligence as good and capable warehousemen are accustomed to show under like circumstances.
In view of the unvaried custom of the claimant in respect of all shippers, to require a bill of lading before forwarding goods received for shipment, it can not be held that because the packages loaded on the claimant’s car were addressed in the usual way of marking to the United States depot quartermaster at New York City, therefore the claimant had sufficient direction to impose upon it the duty and obligation of immediate shipment.
This action is brought to recover freight earnings due the claimant for services rendered in the transportation of the property- of the Government over its line of road, which were withheld by the accounting officers of the Treasury in the settlement of its accounts and applied to the payment of the value of the goods so burned, on the theory that the claimant was liable therefor as a common carrier. (7 Comp. Dec., p. 65.)
As the defendants have failed to show negligence on the part of the claimant in the care and custody of the goods so burned, as they would have had to do had they brought suit to recover therefor, and as the court has reached the conclusion that the claimant, in the care of the defendants’ property, was a warehouseman and not a common carrier, and therefore only chargeable with ordinary diligence, it is entitled to recover judgment in the sum of one thousand six hundred and six dollars and fifteen cents ($1,606.15), which is accordingly ordered.