# John B. Fuller, Appellant, v. Illinois Central Railroad Company, Appellee.

1. COMMON CARRIERS—*when responsibility attaches.* The responsibility of a common carrier for goods received by it begins as soon as the same are delivered and ready for immediate transportation. If the shipper captiously withholds shipping directions the company into whose possession the goods have come is only liable as a warehouseman during the period of the withholding of such directions.

2. RAILROADS—*discretion as to location and maintenance of stations.* Railroad companies are vested with considerable discretion as to the location and maintenance of their stations and whether or not they are bound to maintain a station depends upon a variety of facts and circum-

stances. There is no presumption of law that a railroad company is required to maintain a station at a particular point merely because it had formerly kept one thereat.

3. RAILROADS—*when deed does not impose obligation to maintain station.* A deed in order to impose the obligation upon the grantee railroad company to maintain a station on the land conveyed, must contain a stipulation to that effect which constitutes a personal covenant or a condition subsequent.

Action in case. Appeal from the Circuit Court of De Witt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1911. Affirmed. Opinion filed October 14, 1911.

HERRICK & HERRICK and JOHN FULLER, for appellant.

LEMON & LEMON, for appellee; JOHN G. DRENNAN, of counsel.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action on the case, for the recovery of damages occasioned by the alleged delay of the defendant in carrying certain live-stock of the plaintiff from Fullerton, Illinois, to the stock-yards at Chicago. At the close of the plaintiff's evidence, the court directed a verdict in favor of the defendant, upon which judgment was rendered in bar of action and for costs.

The evidence shows that the defendant had maintained a station and an agent at Fullerton for many years prior to March 1, 1909; that the duties of such agent were to receive the billing for stock and deliver shipping contracts; that during such time the defendant had maintained side-tracks and chutes for the purpose of receiving and discharging live-stock at such station, and that the plaintiff for many years had shipped stock over the defendant's road to the Chicago market; that during said period, the defendant's agent at Fullerton had, at the plaintiff's request, from time to time, procured cars to be set upon its sidetrack at the

chutes, for shipment of such stock, and had received the billing therefor and delivered contracts with him for the shipping of said stock.

The evidence further shows that Fullerton is a flag station on the defendant's road, situated two miles from Parnell, a regular station; that after March 1, 1909, the defendant discontinued said station and thereafter had no agent there, of which fact the plaintiff was aware; that on March 9th, the defendant, at the request of the plaintiff, set two cars on its side-track at the chutes in Fullerton, into which the plaintiff loaded his live-stock; that said stock remained in said cars until about noon of the second day, when they were unloaded and fed, and in the evening re-loaded, at which time one of the conductors of a freight train of the defendant received the billing for the stock and delivered the contract of shipment to the plaintiff. The stock was taken to Chicago that night, arriving in time for the market the next day. There is evidence tending to prove that by reason of the delay, the live-stock suffered a heavy shrinkage in weight, and that by reason of their condition they failed to sell for the same price that they otherwise would have sold.

The evidence introduced by the plaintiff further shows, that at the time he ordered the cars from the agent of the defendant at Parnell, said agent endeavored to obtain from him billing directions, but that the plaintiff refused to furnish such information unless said agent would go to Fullerton and there receive such directions and information; that on the evening of the day after the stock were loaded, the agent at Parnell again endeavored to induce the plaintiff to give him the billing instructions and sign the contract, but that the plaintiff again refused to do so; that the agent then gave the necessary papers to the conductor of a freight train, who upon the arrival of his train at Fullerton, received from the plaintiff billing directions, and exe-

cuted the shipping contract, whereupon the stock was loaded upon the next following train, taken to Chicago and there delivered to the consignee.

The fair inference to be drawn from the evidence, is that the plaintiff resented the discontinuance of the station and agent at Fullerton, and captiously refused to give billing instructions or sign a shipping contract at any other place than at Fullerton, under the erroneous belief that the defendant had no right in law to abandon such station. We think the trial court properly directed a verdict.

As a general rule, the responsibility of a common carrier for goods received by it begins as soon as the same are delivered and ready for immediate transportation. But on the contrary, if the goods, when so deposited, are not ready for immediate transportation, and the carrier cannot make arrangements for their carriage to the place of destination until something further is done, or some further direction is given or communication made concerning them by the owner, the deposit must be considered to be in the meantime for his convenience and accommodation, and the receiver, until some change takes place, will be responsible only as a warehouseman. The party bringing the goods must first do whatever is essential to enable the carrier to commence or to make needful preparation for commencing the service required of it before it can be made liable or subjected to responsibility in that capacity. The rule is well settled that the liability of the carrier, as such, does not begin until the duty to immediately transport the goods arises. More on Carriers, p. 130; 4 Elliott on Railroads, Sec. 1403; R. R. Co. v. Montgomery, 39 Ill. 335.

The stock in question was not delivered to the appellee as a common carrier until the billing directions were given. The railroad company is engaged in both warehouse and transportation business. Where goods

are deposited either in a warehouse or otherwise placed in its custody as a mere accessory to the carriage, and for the purpose of facilitating it, its liability begins at once as a carrier, although the goods or property may not be actually transported for some time afterward. But where the shipment is delayed because of orders of the shipper or consignee, or, what is the same thing, by the failure or refusal of the shipper to do something that is essential as a condition precedent to the performance of the duty of the carrier, and delay is occasioned thereby and consequent injury results, the liability of the receiver is that of warehouseman and not of carrier; the reason of the rule being that there has never been a complete delivery of the property to the carrier in its capacity as such. In the case of Illinois Central Railroad Company v. Smyser, 38 Ill. 354, cited and relied upon by counsel for appellant, there was a complete and absolute delivery of the goods to the company, and the case is therefore not in point.

But aside from the above rule, in the case at bar, even if there had been a delivery of the stock to the defendant as a common carrier, the plaintiff, by captiously refusing to give the billing directions and thereby causing the delay in the shipment and the injury complained of, could not recover upon any reasonable theory of the case. It does not follow that because the defendant had formerly kept an agent at Fullerton, to there receive the billing of stock, it was bound in law to continue such practice. Railroad companies are vested with considerable discretion as to the location and maintenance of their stations, and whether or not they are bound to maintain a station, depends upon a variety of facts and circumstances. There is no presumption of law that it was required to maintain a station at a particular point merely because it had formerly kept one thereat. R. R. Co. v. People, 132 Ill. 559; R. R. Co. v. People, 152 Ill. 230.

We do not think the deed by a former owner, conveying to the grantor of the defendant the land upon which the station of Fullerton was located, wherein it is recited that the consideration for such conveyance is that the grantee will maintain a switch and flag station at Fullerton, was material to the issues in this case, such stipulation being neither a personal covenant nor a condition subsequent.    Traction Co. v. Warrick, 94 N. E. 833.    Moreover, the abstract fails to show that said deed was offered in evidence, or that the court ruled upon its admissibility, or that there was any exception taken.

The judgment of the circuit court will be affirmed.

*Affirmed.*