## SMITH v. PAYNE, Agent, etc.

No. 3760. Decided April 19, 1922. (206 Pac. 715.)

1. CARRIERS—NOT RELIEVED OF LIABILITY BECAUSE STATE VETER-INARIANS NECESSARILY EMPLOYED IN DISINFECTING CARS. Where the disinfection of railroad cars was done with appliances and by men furnished by the railroad company, and the deputy state veterinarian supervising the work had no authority over them, and furnished nothing, and did nothing but mix the disinfect-ant and give general directions, the railroad company was liable to a shipper of stock damaged by the act of one of the workmen in adding an excessive amount of cresol to the dis-infectant, rendering it poisonous, though the deputy veter-inarian was necessarily employed.

2. EVIDENCE—HYPOTHETICAL QUESTIONS MAY BE BASED ON ALL OR PART OF FACTS. Hypothetical questions put to an expert wit-ness may be framed either on all the facts in the case or on any part of the facts assumed to be true.[1]

3. APPEAL AND ERROR—THAT HYPOTHETICAL QUESTION EMBRACED FACTS NOT PROVED HELD HARMLESS IN VIEW OF CHARGE. Where the court charged that the facts assumed in a hypothetical ques-tion must be substantially proved to entitle the opinion of the witness to any weight, it was not reversible error that some of the facts assumed were without foundation in the evidence.

[1] *Palmquist* v. *Mine & Smelter Supply Co.*, 25 Utah, 257, 70 Pac. 994.

4. CARRIERS—INSTRUCTION AS TO DISINFECTION OF RAILROAD CARS HELD PROPERLY REFUSED AS LIKELY TO MISLEAD. Where it was claimed that railroad cars were disinfected with a solution containing an excessive amount of cresol, a poison, but there was no claim that it was improper to apply it with a cup, or bucket, or to mix it with water without lime, an instruction that plaintiff had not shown how the solution should have been applied, and therefore the jury might not find that it was negligently applied, was properly refused, as it might have been misleading.

5. . TRIAL—INSTRUCTION NOT ERRONEOUS BECAUSE NOT INCLUDING MATTER UNSUPPORTED BY EVIDENCE. An instruction that the acts of section men and other persons employed or authorized by a railroad company to disinfect cars were its acts was not erroneous because not including the hypothesis that a deputy state veterinarian supervising the work might be an independent contractor, when there was no evidence that he was such a contractor.

6. CARRIERS—INSTRUCTION AS TO LIABILITY FOR ACTS OF EMPLOYÉS NOT ERRONEOUS AS INCLUDING STATE VETERINARIAN. An instruction that the acts of section men and others employed or authorized by a railroad to disinfect cars were its acts was not erroneous as referring to the deputy state veterinarian supervising the work, and who was charged with no neglect.

7. . TRIAL—REFUSAL OF INSTRUCTION SUFFICIENTLY COVERED NOT ERROR. The refusal of instructions correctly stating the law, but on points sufficiently covered in the instructions given, was not reversible error.

Appeal from District Court, Third District, Salt Lake County; *A. R. Barnes,* Judge.

Action by E. W. Smith against John Barton Payne, as Agent of the President, etc. From a judgment for plaintiff, defendant appeals.

AFFIRMED.

*Geo. H. Smith, J. V. Lyle, R. B. Porter,* and *Dana T. Smith,* all of Salt Lake City, for appellant.

*Howat, Marshall, Macmillan & Crow,* of Salt Lake City, for respondents.

WEBER, J.

This is an action for damages to a shipment of sheep from Homedale, Idaho, to Sage, Wyo. The jury returned a verdict in favor of plaintiff. Defendant appeals.

Eleven cars, used in shipping about 2,515 sheep, were loaded on April 19, 1919. At that time the sheep were in good condition. A deputy state veterinarian certified that he found them "free from scabbies or symptoms of contagious or infectious or communicable disease." With the exception of about 60 bucks, the sheep were pregnant ewes, due to commence lambing in about 12 days from the date of shipment. Of the ewes approximately 400 died, and a great many aborted. The plaintiff testified that he got about a 7 per cent. lamb crop. It is the claim of plaintiff that the sheep died from the effects of a disinfectant which had been used to spray the cars in which the sheep were afterwards loaded. Plaintiff's evidence tended to prove that the disinfectant, instead of being a 3 per cent. solution of cresol, the amount prescribed by the government formula, was from 5 to 9 times the proper amount. There is also testimony showing that the loss of sheep and the injury to them was due to the inhalation of the cresol fumes and the licking or eating the disinfectant by the sheep. Counsel for appellant say in their brief:

"The evidence in the case is extremely prolix, a large part of it being that of experts, and any extended review of the evidence in this brief would be impossible."

It is apparent that to state in detail the evidence and to review it intelligently would require the publication of this opinion in serial form. A careful examination of the record convinces us that enough substantial evidence was adduced by plaintiff to justify the court in submitting the cause to the jury.

Counsel for appellant contend that the cars were disinfected by the deputy state veterinarian of Idaho, and that the railroad is relieved from liability because it was required to employ him to disinfect the cars. The evidence shows that Dr. Hurd, the veterinarian referred to, was present at the time for no purpose except to direct the disinfection. For

that supervision the appellant paid to the state of Idaho $16 and charged respondent $44 for having the cars disinfected. All Dr. Hurd did was to mix the disinfectant and give general directions to appellant's employés. The disinfectant, all the paraphernalia, and the men who did the spraying were furnished by the appellant. These men were under the immediate supervision and control of the section foreman. No complaint is made of Dr. Hurd or what he did. The evidence shows that he properly prepared the solution, after which, without direction from him, and without his knowledge, railroad workmen added an excessive amount of cresol to the solution, and thus furnished the disinfectant which, when applied to the cars, rendered them unsafe for the transportation of the sheep. Dr. Hurd was an inspector only. He hired no men. He did not pay them. He gave them no orders. He had no authority over them. He furnished nothing. He represented the state of Idaho, not the railroad company. The cars that were disinfected were on the railroad track, and in the custody and control of the railroad company. It was the duty of the railroad company to do the work properly. In delivering cars in the condition that made them unsafe for the carriage of sheep, it was negligent. The rule of law invoked by appellant, that, "whenever a person is absolutely compellable by law to employ a particular individual in a given manner, the law which compels him to employ that individual takes away his responsibility arising from any act of that individual," is not applicable to the facts in this case. The implied contract was that the appellant should see that these cars were properly disinfected. The gravamen of the charge of negligence, as stated in plaintiff's complaint, is:

"That the defendants, at Homedale, aforesaid, carelessly and negligently caused and permitted said sheep to be loaded into and transported in 11 cars which were in an unfit and unsafe condition for the carriage of said sheep, in that the floors and inside walls of said cars had just prior to the loading of said sheep therein been by defendants sprayed with an antiseptic solution containing a large and altogether excessive amount of cresol, a deadly poison. * * *"

In reply to a hypothetical question which covered the salient

testimony adduced by respondent, Dr. R. N. Mead, a veterina-
rian, expressed it to be his opinion that cresol poison was the
primary cause of the death of the sheep.   The hypothetical
question occupies some 15 pages of the printed abstract, and
contains as fair and complete a résumé of the evidence as one
could expect during the hurry of a hotly contested trial.   It
is contended by appellant that some of the purported facts
stated in the hypothetical question were without foundation
in the evidence.   The facts stated in the question did not de-
part materially from the evidence, but, even if some of
the facts were only assumed to be true, such statement      **2, 3**
would not constitute reversible error for two reasons:
(1)  The rule is, as stated in *Palmquist* v. *Mine & Smelter
Supply Co.*, 25 Utah, 257, 70 Pac. 994, ''hypothetical ques-
tions to an expert witness may be framed either upon all the
facts in the case or upon any part of the facts assumed to be
true;  *  *  *  ''  and (2) the court expressly instructed the
jury at the time when the question was propounded to Dr.
Mead, and later in the formal instructions, that in answering
the hypothetical question the witness assumed the facts
therein stated to be true, and based his answer upon the as-
sumed facts, and that the facts stated in the question must
be substantially proved to entitle the opinion of the witness to
any weight.

Appellant contends that the court erred in not instructing
the jury, as requested:

"That the plaintiff has not shown how the solution used to
disinfect the cars should have been applied and therefore you may
not find that it was negligently applied."

Counsel for appellant argue that—

"There is no evidence in the record to show that it was im-
proper to apply the disinfectant with a cup or bucket, or as it was
applied, or that it was improper to mix the disinfectant with water
without lime, or that the manner in which the disinfectant was
applied was improper in any respect."

No claim was made by respondent that it was improper to
apply the disinfectant with a cup or bucket.   No such claim
was made in the complaint or otherwise.   Whether the cresol
solution was sprayed on, sprinkled on, or poured on, or

applied by some other method, was entirely immaterial if the proper solution was applied. Nor was it an issue in the case whether it was improper to use the disinfectant without lime. To have told the jury that there was no evidence as to how the disinfectant should be applied would have, or might have, been misleading, and might have been taken as an intimation by the jury as referring to the character of the solution itself when according to the evidence the cars should have been disinfected with a 3 per cent. solution of 50 per cent. cresol disinfectant, as required by the government formula.

One of the instructions is criticized because it informed the jury that the acts of section men and other persons employed or authorized by the railroad company to disinfect the cars, while performing such duties, were acts of the railroad company. Counsel complain that this instruction is too broad, in that it does not include the hypothesis that Dr. Hurd may have been an independent contractor. There is no evidence that Dr. Hurd was an independent contractor, and the instruction clearly did not have reference to him. He was not charged with any neglect.

No useful purpose would be served by discussing all of appellant's exceptions to the rulings of the court in granting and refusing instructions. The instructions fairly covered all the matters necessary to a correct understanding by the jury of the law of the case. Some of the refused instructions correctly stated the law, but were upon points sufficiently covered in instructions which were given.

We find no reversible error in the record. The judgment is therefore affirmed, with costs.

CORFMAN, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.