## CAMPBELL v. LOS ANGELES & S. L. R. CO.

No. 4577.   Decided January 14, 1928.   (263 P. 495.)

174

176

*George H. Smith, J. V. Lyle, R. B. Porter*, and *Dana T. Smith*, all of Salt Lake City, for appellant.

*James E. Rait*, of Omaha, Neb., and *Woolley & Holther*, of Ogden, for respondent.

HANSEN, J.

In this action the plaintiff recovered a judgment against the defendant for injury to 24 carloads of cattle. The defendant prosecutes this appeal from the judgment.

In December, 1924, the Clayton-Murnan Livestock Company, plaintiff's assignor, shipped 1253 head of cattle from Ogden, Utah, to Los Angeles, Cal. The cattle were taken by the Oregon Short Line Railroad Company from Ogden, Utah, to Salt Lake City, Utah, and were then transferred over the railroad of the defendant Los Angeles & Salt Lake Railroad Company to their destination at Los Angeles, Cal. The cattle were taken to Las Vegas, Nev., in two separate shipments. The first shipment, consisting of 28 carloads, left Ogden December 9th, and arrived at Las Vegas on the following day. The second shipment, consisting of 11 carloads, left Ogden December 10th, and arrived at Las Vegas, December 12th. On the morning of December 11th, 15 carloads of the first shipment went out of Las Vegas for Los Angeles. At the request of the shipper, and with the consent of the defendant railroad company, the remaining 24 carloads of cattle were held in the stockyards at Las Vegas to await the order of the shipper as to when they should be sent on to Los Angeles. The stockyards where the cattle were so held are maintained for the accommodation of shippers of live stock over the defendant's railroad. When the

cattle were unloaded at the Las Vegas stockyards, each carload was placed in a pen and kept separate from the other cattle. On the morning of December 13th John M. Heaton, freight agent of the company, learned that 90 carloads of cattle were coming from Ogden, and would arrive at Las Vegas some time in the afternoon or evening of that day. It was therefore necessary for the defendant railroad company to make provision for unloading these additional carloads of cattle at Las Vegas so they could receive feed, water, and rest for at least five hours before proceeding on to Los Angeles. John M. Heaton, in addition to being freight agent for defendant railroad company at the time the cattle were shipped by plaintiff's assignor, was also its yardmaster at Las Vegas. There is some conflict in the evidence as to what occurred with respect to the cattle involved in this action after the information was received that 90 additional carloads of cattle were coming in on the afternoon of December 13th, to be unloaded in the stockyards at Las Vegas.

Alfred Burrell, who was caretaker of the cattle for the shipper, testified that in the forenoon of December 13th, John M. Heaton, freight agent and yardmaster of the defendant railroad company, informed him that 90 carloads of cattle were coming in on that day, and were to be unloaded in the stockyards at Las Vegas; that Heaton asked Burrell if the cattle in his charge could be bunched, that is, a number of carloads put into one pen; that Burrell suggested to Heaton that a part of the 90 carloads of cattle that were coming in might be unloaded at Caliente, to which Heaton replied that the railroad company did not do business that way; that thereupon Burrell stated he would send a telegram to find out if the cattle could be bunched, to which Heaton replied: "By God, we will call the crew right now"; that Heaton then called the switch engine crew, and ordered the cattle loaded into the cars. Burrell further testified he immediately sent a telegram to Charles Clayton advising him of the situation, and at about 3 o'clock in the afternoon re-

ceived a telegram in reply. The telegram from Clayton was offered and received in evidence, and is as follows:

"Notify railroad not load out cattle or they be liable seventy five pounds shrink and any loss or damage to cattle bunch your cattle which you reasonably can show this to agent.

"Chas. Clayton."

Upon receipt of the telegram from Clayton, according to Burrell's testimony, he showed it to Heaton, and informed him that he had permission to bunch the cattle, to which Heaton replied: "There can't be nothing done with those cattle. Those cattle will stay where they are at. Those cattle we have got them backed up in the yards here, and they will stay there until that train arrives and departs"; that Burrell then requested that, if the cattle could not be held in the stockyards at Las Vegas, they be moved on to Los Angeles.

John M. Heaton, who testified at the trial as a witness for the defendant railroad company, gave a somewhat different version of the conversation between him and Burrell, but, as this is an action at law, the jury is the sole judge of the credibility of the witnesses, and we are precluded from passing upon the weight of the testimony.

The evidence shows without conflict that the cattle were loaded into the cars before 3 o'clock in the afternoon of December 13th, and were kept confined in the cars until after 4 o'clock a. m. of December 14th, except three carloads, which were unloaded either in the afternoon or evening of December 13th because the cattle in these cars were down and being injured. There is evidence from which the jury might well have found that there was ample time to unload the cattle after Burrell received the telegram granting permission to bunch them, and before any of the 90 carloads of cattle arrived at Las Vegas. The evidence also shows that, if the cattle involved in this action had been bunched, the stockyards at Las Vegas were ample to care for them without any interference with the 90 carloads that

arrived in the afternoon or evening of December 13th. The evidence also shows that, when cattle are confined in railroad cars that are not moving, they are much more prone to become injured than when the cars are moving. Plaintiff's evidence further shows that many of the cattle confined in the cars were bruised, scratched, and crippled, some had broken horns and ribs, that five head died in course of transportation, and that all were in what cattle dealers call a "stale" condition, with "dead hair," and did not look fresh after their confinement in the cars at Las Vegas, and that as a result of their injuries the cattle could not be sold for as much as they would otherwise have brought. Plaintiff's evidence also tends to show that, on account of the condition of the cattle, as a result of their confinement in the cars, it was necessary to purchase additional feed for them before they could be placed on the market.

Appellant does not attack the judgment upon the ground that the damages awarded are excessive but upon the ground that the court committed errors of law in the trial of the cause, and that upon the facts defendant is not liable at all, except for the value of the five head that were killed.

Plaintiff in his complaint bases his claim for damages upon two grounds of breach of duty of the defendant to plaintiff, namely: (1) That the facilities maintained by the defendant for caring for live stock while being fed, watered, and rested in transit on its railroad between Salt Lake City and Los Angeles were inadequate to care for the live stock handled by the defendant; (2) that the defendant was negligent in loading the cattle into the railroad cars at Las Vegas and permitting them to remain in the cars for the period of time that the cattle were so confined.

At the conclusion of the evidence the trial court disposed of plaintiff's claim that defendant did not maintain sufficient facilities for the care of live stock while being fed, watered, and rested while in transit over its railroad by instructing the jury as follows:

"No. 11. The jury is instructed that there is no evidence that the pens and yards maintained by the defendant at Las Vegas, Nev., for the feeding, watering, and resting of live stock in transit, are not reasonably sufficient for the ordinary and usual volume of business at that point."

Some of appellant's assignments of error are based upon the admission of evidence affecting the yards and pens maintained by the defendant for the purpose of caring for live stock being shipped over its railroad. If any errors were committed in this respect, the same were cured by the court's instruction to the jury, and therefore no useful purpose can be served by a discussion of these assignments in this opinion. As affecting plaintiff's claim for damages for loading the cattle into the cars and permitting them to remain therein, the court gave, among others, the following instructions:

"No. 2. You are instructed that the defendant is a common carrier, and is liable for loss or injury to property intrusted to it for transportation, which loss or injury is not caused by an act of God or the public enemy. This rule applies to live stock, with the further exception that the carrier is not liable for loss resulting from the inherent vice, nature, or propensities of the property, and not due to any negligence or fault on the carrier's part. This rule exempting the carrier from loss occasioned by the inherent nature of property or the natural propensities of animals, and not due to negligence, is not to be extended as to relieve the carrier from the duty to take notice of the ordinary weakness, character, and propensities of domestic animals, and to make such provision against loss or injuries therefrom as many reasonably be done in furnishing means for transportation and providing for the protection of the property during transit."

"No. 3. You are instructed that the burden is upon the plaintiff to prove, by a preponderance of the evidence, all of the material allegations of his complaint before he would be entitled to recover in this action.

"That is to say, before the plaintiff would be entitled to recover of the defendant, he must prove to your minds by a preponderance of evidence in the case that the defendant carelessly, negligently, and against the will of the shipper and of its caretaker loaded the

cattle involved in this action, and handled them in the manner described and alleged in plaintiff's complaint, and that said negligence on the part of the defendant was the proximate cause of the injury to said cattle, and resulted in damage to the plaintiff.

"If you find from a preponderance of the evidence in the case that the plaintiff has proven the negligence of the defendant, and that said negligence was the proximate cause of the injury to said cattle, and that damage resulted to the plaintiff thereby, then you are instructed that the plaintiff would be entitled to recover of the defendant such sum or sums as you may find from the evidence would reasonably compensate him for the damages sustained by reason of defendant's negligence, not to exceed, however, the sum of $8,709.50, together with interest from December 13th, 1924, or from the time the damages were sustained, if you find any damages were sustained by the plaintiff the amount for which he sues in this action. * * *

"No. 9. You are instructed that the laws of the United States fix a minimum period of five consecutive hours for feed, water, and rest in pens, but do not fix a maximum period. In this connection the jury is instructed that the defendant was under no duty, and was not required, to ship the stock in question from Las Vegas, Nev., to Los Angeles, Cal., after it had been instructed by the shipper to hold said stock at Las Vegas, Nev., until the shipper canceled said instructions, and directed that said stock be forwarded, if you find from the evidence that the defendant was instructed by the shipper to hold said stock at Las Vegas, Nev.

"No. 10. You are instructed that the defendant, although required to furnish suitable pens for feed, water, and rest after confinement, is not required to furnish pens for any other purpose, such as holding cattle for favorable markets or for conditioning or fattening cattle."

"No 13. The jury is instructed that in this case the defendant was under the duty of accepting instructions from the shipper relative to the carriage of the live stock in question. If it followed such instructions, and the live stock was injured, but not in the course of carriage, then the defendant is not liable as a carrier. In this connection, however, you are instructed that the defendant, having elected to place the cattle in question upon the cars and side track at Las Vegas, was under the duty and obligation of exercising ordinary and due care, in view of all of the surrounding circumstances, in the handling of such cattle, and, if you find that the defendant was negligent, as charged by the plaintiff, in the handling of said cattle at this time and place, and that said negligence was the proxi-

mate cause of injury to said cattle and damage to this plaintiff, then your verdict should be for the plintiff, and you should assess his damages, as elsewhere in these instructions is explained to you, but, if you believe from all the evidence that the defendant did exercise ordinary care in the handling of said cattle, and was not negligent, as charged by the plaintiff, then your verdict should be for the defendant, no cause of action, except in the amount which you may find the plaintiff is entitled to recover by reason of the death of the two cows and four calves, as is elsewhere in these instructions explained to you.

"No. 14. The court instructs the jury that common carriers are not insurers of live stock transported by them, but the law does require the exercise of ordinary care in the handling and transportation of freight, and if from the evidence you find that defendant did not exercise ordinary care in handling and transporting the cattle in question, considering all the facts and circumstances as shown by the evidence in the case, and if from the evidence you find that defendant was negligent as alleged by the plaintiff in his complaint, then you should return a verdict for the plaintiff."

The court also instructed the jury as to what is negligence, ordinary care, and proximate cause. Appellant does not complain of the instructions so given upon negligence, ordinary care, and proximate cause.

Appellant assigns as error the giving of instruction No. 2, above quoted. It is earnestly contended that defendant is not liable as a common carrier for any injury to the cattle involved in this action at the time they were loaded into and kept confined in the cars at Las Vegas, because the cattle had then been fed, watered, and rested for more than five hours. It is also contended that, as the cattle were being held at Las Vegas without any additional compensation, and at the request of the shipper, and for the shipper's benefit that therefore the defendant was bound to exercise only slight diligence, and was responsible only for gross negligence or bad faith. In support of this contention the following cases are cited and relied upon: *Mt. Vernon Co.* v. *Alabama G. S. R. Co.*, 92 Ala. 296, 8 So. 687; *Burrowes* v. *Chicago, B. & Q. Ry. Co.*, 85 Neb. 497, 123

N. W. 1028, 34 L. R. A. (N. S.) 220; *St Louis, Alton &
Terre Haute R. Co.* v. *Montgomery*, 39 Ill. 335; *Chicago,
B. & Q. Ry. Co.* v. *Powers*, 73 Neb. 816, 103 N. W. 678;
*Fuller* v. *Illinois Central R. Co.* 164 Ill. App. 284; *M. S.
& N. I. R. Co.* v. *Shurtz*, 7 Mich. 515; *L. & L. F. Ins. Co.*
v. *R. W. & O. R. R. Co.*, 144 N. Y. 200, 39 N. E. 79, 43 Am.
St. Rep. 752; 10 C. J. pp. 226 and 231; 4 R. C. L. pp. 688,
748, and 759; 1 Hutchinson on Carriers (3d Ed.) §§ 112,
113, and 119; *Schmidt* v. *Chicago & N. W. R. Co.*, 90 Wis.
504, 63 N. W. 1057; *Kansas City, M. & O. R. Co.* v. *Cox*,
25 Okla. 774, 108 P. 380, 32 L. R. A. (N. S.) 313; *Reed*
v. *Philadelphia, W. & B. R. Co.*, 3 Houst. (Del.) 176; *Knapp*
v. *Minneapolis, St. P. & S. S. M. Ry. Co.*, 34 N. D. 466,
159 N. W. 83; *Central of Georgia Ry. Co.* v. *Sigma Lumber
Co.*, 170 Ala. 627, 54 So. 205, Ann. Cas. 1912D, 965; *Kent* v.
*Chicago, B. & Q. R. Co.*, 189 Mo. App. 424, 176 S. W. 1105.

These cases and texts hold that a common carrier is liable
as such when goods are delivered by the shipper and re-
ceived by the carrier for immediate transportation. When
however, goods are being held, either before the transpor-
tation begins or after the transportation is completed, for
the accommodation of the shipper, and also where goods
are held by the carrier, and are not ready for immediate
transportation, the measure of the carrier's responsibility
is that of an ordinary bailee or warehouseman.

It is respondent's contention that defendant is responsible
as a common carrier during the time the cattle were being
held at Las Vegas. In support of this contention these cases
are cited: *Stiles, etc.,* v. *L., etc., R. Co.*, 129 Ky. 175, 110
S. W. 820, 18 L. R. A. (N. S.) 86, 130 Am. St. Rep. 429;
*L. etc., R. Co.* v. *Stiles, etc.*, 133 Ky. 786, 119 S. W. 786,
134 Am. St. Rep. 491; 10 C. J. 104, note 49; *Dee* v. *S. P.,
L. A. & S. L. R. Co.*, 50 Utah 167, 167 P. 246; *Groot* v. *O. S.
L. R. R.*, 34 Utah 152, 96 P. 1019; *Byram* v. *Payne*, 58 Utah
536, 201 P. 401, 18 A. L. R. 1110; *Smith* v. *Payne*, 60 Utah
89, 206 P. 715; *C. R. I. & P. Ry. Co.* v. *Butler*, 132 Ark.

37, 200 S. W. 144, L. R. A. 1918C, 537; *Snyder* v. *King,* 199 Mich. 345, 165 N. W. 840, 1 A. L. R. 893; *Kansas C., M. & O. Ry. Co.* v. *Cluett* (Tex. Civ. App.) 216 S. W. 682; *Phelps* v. *Great Northern Ry. Co.,* 66 Mont. 198, 213 P. 610; *Erisman* v. *Wabash Ry. Co.* (Mo. App.) 243 S. W. 237; *Chicago, R. I. & P. Ry. Co.* v. *Stallings,* 132 Ark. 446, 201 S. W. 294; *Galveston H. & S. A. Ry. Co.* v. *Buck* (Tex. Civ. App.) 230 S. W. 891; *Book & Olson* v. *Payne,* 48 N. D. 435, 184 N. W. 803; *St. L. S. F. R. Co.* v. *Hensley,* 113 Okl. 232, 241 P. 135.

As hereinbefore stated, Burrell, the caretaker of the cattle, testified that, when the cattle were being loaded into the cars at Las Vegas over his objection, he requested that they be moved on to Los Angeles. If the jury believed Burrell in this respect, the cattle were ready for immediate transportation, and, under the authorities, the responsibility of the defendant as a common carrier immediately attached. It may be observed that Heaton, the agent and yardmaster of defendant, denied that Burrell so directed, but otherwise no reason is shown by the evidence why the cattle were not moved on toward their destination.

As an academic proposition, it may be interesting to determine whether the defendant was under the responsibility of an ordinary bailee or warehouseman or that of a common carrier toward the cattle in question during all of the time they were being held at Las Vegas, but such determination will not aid us in reaching a proper conclusion in this case.

If instruction No. 2 is read in connection with instructions Nos. 3, 9, 10, 13, and 14, above quoted, it will be seen that the court clearly instructed the jury that the defendant could be held to respond in damages only in case a preponderance of the evidence showed that defendant was guilty of negligence which proximately caused injury to the

cattle. We are of the opinion that defendant was under at least as great a responsibility toward the cattle during all of the time they were at Las Vegas as that of an ordinary bailee for the mutual benefit of bailor and bailee. All of the authorities cited and relied upon by appellant where the question is discussed so hold, with the possible exception of *M. S. & N. I. R. Co.* v. *Shurtz*, supra, the facts of which are not comparable to the facts in this case.

Alfred Burrell, a witness called by the plaintiff, was asked to relate a conversation had with E. E. Cunningham, a division superintendent of the defendant railroad. In answer to the question he testified as follows:

"I asked Mr. Cunningham if he didn't think that they treated Mr. Clayton wrong in handling his live stock, as he being a good customer, in the manner they have handled them. He said: 'We have got busy as soon as we found out that they was Clayton's cattle.' I said: 'That is a poor way to treat a customer like Mr. Clayton, one of your largest—I guess, largest—live stock shipper the Union Pacific has,' and I says: 'Mr. Cunningham, we don't have any grief to speak of anywhere over any other division; this looks to me like a case of spite to hurt Mr. Clayton.' Mr. Cunningham said: 'God damn you, you and Clayton, you are not running this Union Pacific Railroad.'"

Immediately after the answer was given counsel for defendant moved to strike out the entire answer of the witness on the ground that the conversation was immaterial and irrelevant. The court denied the motion to strike. The ruling of the court in this respect is assigned as error. It is clear that the motion may well have been granted. There was no objection to the question, and the answer was responsive to the question. The law applicable to a proposition such as is here presented is thus stated in Jones Commentaries on Evidence (2d Ed.) § 2529, p. 5003.

"A motion to strike is not a substitute for an objection, nor is it a remedy for him who waits to discover whether the answer to a question patently calling for improper evidence will be favorable or unfavorable. It is not available where the party against whom it is offered makes no objection to questions which clearly call for im-

proper evidence. One who has thus taken his chances of advantage has not, when he finds the testimony prejudicial, the legal right to exclude it."

Numerous cases are cited in the footnote to the text. The rule above quoted is of course well established, and therefore defendant had no legal right to have the objectionable testimony stricken. It may be observed that Cunningham denied using the language attributed to him by Burrell.

Charles Clayton, a witness called by the plaintiff, testified that he was 54 years old; that he had been in the live stock business practically all his life, and had engaged extensively in shipping cattle across the United States and from California to Missouri, also from Nebraska to London, England. He described in detail the cattle involved in this action when they left Ogden, and also when they arrived at Los Angeles. He was then asked this question: "Was the condition you observed at Los Angeles of the cattle you saw, in your opinion, the result of normal transportation injuries, or was it from some other cause?" Defendant objected to the question on the ground that it was immaterial, irrelevant, and not within the issues. The objection was overruled, and defendant excepted. The witness answered: "They were not." This ruling of the court is assigned as error. It is urged in defendant's brief that, by the question and answer, witness invaded the province of the jury, because "this was the very question that the jury was sworn to determine." If the question and answer went to the very question that the jury was sworn to determine, it cannot be said that such question and answer are not both relevant and material, because certain it is that the verdict of the jury was both relevant and material to the issues raised by the pleadings. As to relevant testimony, 2 Jones Commentaries on Evidence (2d Ed.) § 590, p. 1089, has this to say:

"It may be said, generally, that whatever naturally and logically tends to establish a fact in issue is relevant, and that which does not answer these requirements is not."

The fact that the objection to the question was also upon the ground of immateriality adds nothing to the objection. But, even though it should be conceded that the objection to the question should have been sustained, the error would not justify a reversal of the judgment. There is direct and positive evidence as to the condition of the cattle before they were loaded into the cars at Las Vegas and of their condition when unloaded. The answer elicited by the objectionable question added nothing to such evidence.

When the witness Clayton was asked why he went to Las Vegas, he answered because he got into this "wonderful mix-up." A motion was made to strike the answer. The court denied the motion. This ruling is assigned as error. We agree with the appellant that "a wonderful mix-up is meaningless," and, being meaningless, it could not well have had any effect upon the verdict of the jury.

Complaint is also made that instruction No. 15 is misleading, in that the jury might well have duplicated damages. The instruction reads as follows:

"No. 15. The court instructs the jury that, in the event your verdict is for the plaintiff, you will assess his damages as follows:

"(a) If you believe from the evidence that the cattle in question were by the negligence of the defendant injured or damaged, while being held in cars at Las Vegas, then you are instructed that the measure of damages for such injury, if any, would be the difference in the market value of such cattle at the place of destination at the time they arrived there, in their injured condition, if injured, and their market value at such place of destination in the condition they would have been in when they should have arrived there, but for such injuries, in such sum as your deliberations may determine.

"(b) If you believe from the evidence that the market price at Los Angeles, on such cattle as the cattle in question, declined between the date when said cattle would have arrived and been sold at Los Angeles in the ordinary usual time of transportation of said cattle to said place, and the time when they did arrive and were sold, and that the delay, if any, in selling said cattle was caused solely by the negligence and failure of defendant to properly care for said cattle while on the cars and upon the side track at Las Vegas, and that said negligence,

if any, made it necessary for the shipper to hold said cattle at Las Vegas to permit them to recuperate and to be prepared and conditioned for market, then you will assess plaintiff's damages because of such decline in the market price of said cattle as the evidence may show he has sustained, and you should fix his damages in this respect, that is, because of such decline in the market price of said cattle, if any, as your deliberations may determine.

"(c) For loss by shrinkage in weight of said cattle, if any, caused by the holding of said cattle in cars at Las Vegas, if you find said cattle were held in cars at Las Vegas, and that such handling of said cattle was negligent, in such sum as the evidence may show he has sustained by reason of said shrinkage in weight of said cattle, if any, as your deliberations may determine. In this connection, however, the jury should be careful not to include any damage under this subdivision (c) if you determine to find for the plaintiff under said subdivision which may be included under subdivision (a) hereof; in other words, no duplication should occur in your computations, in the event you determine to find for the plaintiff and assess his damages.

"(d) You are instructed that the defendant confesses liability on account of the death of two cows and four calves which were killed in transit, and you are instructed that the plaintiff is entitled to a verdict for the reasonable value of said animals, as you may determine from the evidence in the case, not exceeding, however, $242.50, the amount for which the plaintiff prays damages, in this connection.

"(e) If you find from the evidence that the plaintiff suffered loss by reason of incurring expense for feeding said cattle at Las Vegas, which expense was caused solely by the negligence of the defendant in handling said cattle, and while the shipper was compelled to hold said cattle at Las Vegas, if any, then you will assess plaintiff's damages at such sum as the evidence may show plaintiff sustained therefrom and thereby, as your deliberations may determine."

The jury brought in the following verdict:

"We, the jury impaneled in the above-entitled action, find the issue joined in favor of the plaintiff and against the defendant and assess his damages:

| | |
|---|---|
| Court's instruction No. 15, subdivision A | $3,849.56 |
| Court's instruction No. 15, subdivision B | 500.00 |
| Court's instruction No. 15, subdivision C | |
| Court's instruction No. 15, subdivision D | 242.50 |
| Court's instruction No. 15, subdivision E | 750.00 |
| Total | $5,342.06 |

"Frank Thurston, Foreman."

Upon defendant's motion for a new trial, the following order was entered:

"Plaintiff's motion to amend amended complaint, made after verdict and judgment, and at the time of the presentation of arguments on defendant's motion for a new trial, denied.

"It is further ordered that within 15 days from notice of this decision counsel for the plaintiff file with the clerk of this court a remittitur, as hereinafter set out, in which event defendant's motion for new trial will be overruled, otherwise defendant's motion for new trial will be granted.

"That plaintiff will be required to remit as follows:

"Subdivision B (jury's verdict):
The sum of .......................................... $500.00

"Subdivision D:
Plaintiff required to remit $78.50 from $242.50 as found by the jury, thereby reducing plaintiff's recovery under said subdivision D to ........................................ $164.00

"Subdivision E:
Plaintiff required to remit $430.09 from $750 as found by the jury, thereby reducing plaintiff's recovery under subdivision E to ........................................... $319.91

"That is to say, plaintiff is hereby required to remit the total sum of $1,008.59 from the jury's verdict of $5,342.06, thereby reducing plaintiff's recovery to a total sum of $4,333.47, exclusive of costs."

The feed bill was evidently ordered reduced from $750 to $319.91 because the complaint sets out that "an extra feed bill at Las Vegas was made necessary to improve the condition of said animals, before marketing them, due to the events complained of at Las Vegas, and which the defendant collected, amounting to $319.91." The trial court seems to have taken the view that the amount allowed by the jury for the cattle killed was excessive, and hence required the reduction. The record does not disclose the basis for the order requiring the plaintiff to remit the sum of $500, but in any event such order did not injure the defendant. We are unable to see how the jury could have dupli-

cated any damages under the verdict as it stood after plaintiff had consented to remit the items as ordered by the trial court. The evidence is ample to support the judgment appealed from.

We have examined the other errors assigned, and find they are without merit. The judgment is affirmed. Respondent to recover costs.

THURMAN C. J., and CHERRY, STRAUP, and GIDEON, JJ., concur.